**Affirmed and Opinion filed March 5, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00167-CV

## VONDA BARNHART, Appellant

## V.

## SYLVIA MORALES AND LUIS PEREZ, Appellees

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-17655**

## O P I N I O N

In this car wreck case, appellant Vonda Barnhart appeals from a final judgment signed following a jury trial, raising nine issues. In her first two issues, Barnhart contends the trial court abused its discretion when it admitted medical records and a police report containing the results of a blood serum alcohol test performed at the hospital following the wreck. According to Barnhart, the trial court should have sustained her hearsay objection because the records were

untrustworthy given that appellees, Sylvia Morales and Luis Perez, failed to offer evidence establishing a complete chain of custody for Barnhart's blood sample. We overrule both issues because, in a civil case, chain of custody goes to the weight to be given the evidence, not to its admissibility.

Barnhart's remaining issues concern the damages awarded to appellees. Barnhart challenges the factual sufficiency of the evidence supporting the award of past physical impairment damages to Morales and the award of future physical impairment damages to Perez. Because the record on appeal contains factually sufficient evidence that both appellees experienced physical impairment as a result of the injuries they sustained in the wreck, we overrule these issues. Barnhart next asserts that there is legally and factually insufficient evidence to support the award of future mental anguish damages to both appellees. We overrule these issues because the jury's awards were for both physical pain and mental anguish, and Barnhart does not argue on appeal that there is insufficient evidence of future physical pain. Barnhart also challenges the final judgment's award of exemplary damages to appellees. In Barnhart's view, there is factually insufficient evidence supporting the jury's gross negligence finding. We overrule this issue because Barnhart failed to raise it in her motion for new trial. In her final two issues, Barnhart contends the exemplary damages award is excessive and violates her constitutional due process rights. We overrule both issues because the evidence supports the exemplary damages found by the jury and the amount does not run afoul of the constitutional limitations on exemplary damage awards. We therefore affirm the judgment.

## BACKGROUND

Appellees and their children spent Sunday, June 7, 2009, at the Magnolia River on the east side of Houston. On their way home that evening on Interstate

2

10, Morales's truck began to have serious mechanical problems.[1] Morales maneuvered the truck to her right and into the safety zone where the southbound flyover of Beltway 8 merged onto westbound Interstate 10. Morales was able to get most of the truck out of the right hand lane of Interstate 10, but part of the rear end of Morales's truck remained in that lane of traffic. Unable to move the truck any further, Morales put her emergency flashers on and appellees transferred their two children to the car of Morales's brother, who had been following Morales home from the river. Appellees, not wanting to abandon the truck on a busy freeway, decided to remain with the truck to wait for a tow truck. Perez stood in the back of the pick-up truck waving oncoming traffic away from the stalled truck while Morales sat in the driver's seat with her seatbelt fastened.

June 7 was Barnhart's birthday. That afternoon, Barnhart went to celebrate her birthday at the Riverside Inn, described as a biker bar, restaurant, and marina on the east side of Houston. Barnhart spent more than two hours that afternoon at the Riverside Inn celebrating with about twenty acquaintances. Barnhart admitted that she consumed two beers and a shot of Captain Morgan's rum while at the Riverside Inn. Barnhart left the Riverside Inn and was driving westbound on Interstate 10 when she hit the back of Morales's truck. Barnhart testified that she never saw the truck, Perez, or Morales prior to the collision. Barnhart testified that she did not swerve, apply her brakes, or take any other action to avoid hitting the truck. According to Barnhart, she could not see because the setting sun was shining in her eyes.

Arturo Islas was merging onto Interstate 10 from Beltway 8 and he saw the collision. Islas pulled over and went to the crash scene to render assistance. Islas checked Perez's condition, called 9-1-1, and then went to check on Barnhart, who

---

[1] It was learned later that the truck's drive shaft had become disconnected.

was still in her vehicle.  According to Islas, Barnhart was bleeding and he told her not to move.  Islas observed beer cans inside the car and dollar bills attached to Barnhart's shirt.[2]  Islas then checked on Morales, who was still inside her truck. Islas gave Morales his name and phone number and left the scene before the police or ambulance arrived.

As a result of the collision, which occurred about ten minutes after Morales' truck had stalled, Perez was thrown out of the back of the truck.  Perez suffered a broken right wrist and a broken right ankle.  Morales sustained a back injury, which was eventually diagnosed as two herniated lumbar discs in her lower back. Barnhart suffered injuries to her face.  Morales, Perez, and Barnhart were all taken by ambulance to Memorial Hermann Hospital.

Harris County Sheriff's Deputy Chris Hughes responded to the accident. Deputy Hughes arrived at the scene after the ambulance.  After checking on the status of Morales and Perez, Hughes approached Barnhart, who was standing next to her vehicle.  When Hughes spoke to Barnhart, he smelled alcohol on her breath. Hughes was unable to conduct sobriety checks on Barnhart at the scene due to the need to transport her to the hospital, but he suspected she was intoxicated.  Hughes based his suspicion on his observations that Barnhart's eyes were red and bloodshot, her speech was slurred, and she had the odor of an alcoholic beverage emitting from her person.  Hughes also noticed that she had money pinned to her shirt.  Hughes went to the hospital to provide information to the hospital and to also "check for impairment."  Hughes attempted to conduct a field sobriety test on Barnhart at the hospital, but she refused.

---

[2] During her trial testimony, Barnhart denied the beer cans belonged to her.  According to Barnhart, she did not drink beer from cans, only bottles, and she also did not drink the specified brand of beer.

4

Barnhart's Memorial Hermann medical records report that after she arrived at the hospital, the staff treating her observed that Barnhart appeared intoxicated, her speech was slurred, and she smelled of alcohol. Barnhart's medical records also indicate that she was uncooperative and had to be restrained. During her treatment, the hospital took a blood sample and performed a blood serum alcohol test approximately one hour and forty minutes after the wreck. Barnhart's records report the result of that test as .335 percent.

Wayne Snodgrass, a medical doctor and toxicologist, explained during the trial that an alcohol test conducted on whole blood would produce a result slightly lower than a serum alcohol test. Dr. Snodgrass went on to explain that a blood serum alcohol test result can be converted to the result that a blood alcohol test would show. Dr. Snodgrass then performed that conversion and testified that Barnhart's blood alcohol level was .28 percent. Dr. Snodgrass also testified that Barnhart's blood alcohol level would have been higher at the time of the wreck and he opined that her blood alcohol level at that point in time would have been .31 percent. Dr. Snodgrass testified that given Barnhart's blood alcohol content, it was medically impossible that she had only consumed two beers and a single shot of rum. Dr. Snodgrass opined that Barnhart would have had to consume between 13 and 17 alcoholic drinks to reach that blood alcohol level.

Dr. Snodgrass testified that the legal blood alcohol limit in Texas is .08 percent, and therefore Barnhart's blood alcohol level was three and a half times higher. Dr. Snodgrass opined that Barnhart would have been severely impaired as a result of her alcohol consumption and should not have been driving. Dr. Snodgrass explained this was true despite descriptions in Barnhart's medical records that she was alert and oriented. According to Dr. Snodgrass, someone who is a regular drinker, a person often described as able to hold their liquor, might not

5

appear impaired, but the level of impairment is the same as for a person who has no tolerance at all to alcohol. According to Dr. Snodgrass, a person driving a car with a .28 percent blood alcohol level would be unable to comprehend that there was a stalled vehicle ahead in time to maneuver around the stalled vehicle.

During the trial, both Morales and Perez testified about the injuries they received in the wreck as well as the adverse impact those injuries have had on their lives. Morales testified that her back injury was painful and she attended physical therapy for about two months in an effort to reduce the pain. Eventually, when the pain did not subside, Morales received three steroid shots over a six-week period. Morales testified that the steroid shots alleviated the pain for a period of time, but the pain always returned. Morales also testified that she continued doing the exercises she learned during physical therapy at home.

Morales then turned to the impact her injury has had on her lifestyle. According to Morales, she used to spend time with her children at the park, but she could no longer do so because of her back pain. Morales also testified that she can no longer lift heavy objects because of the pain. Morales's medical records indicate that her injury impacted her life in other ways as well. The records show that her back pain (1) prevented her from walking more than one-quarter mile, (2) made it too painful to sit for more than 30 minutes or drive for more than an hour, (3) eliminated her social life, (4) eliminated her sex life, and (5) negatively affected her sleep. The records also note that, in addition to the physical limitations caused by Morales's back pain, she was experiencing feelings of anxiety, depression, and sadness.

Perez, who is right-handed, broke his right wrist and right ankle. As a result of his injuries, Perez spent nearly two months in a wheelchair and was completely dependent on Morales for his personal care. Morales also had to drive Perez to all

of his medical appointments. Perez testified about the impact his injuries have had on his life. According to Perez, he still was experiencing pain at the time of trial. He also testified that he does not have the same amount of strength he had before the wreck, which has limited his ability to lift things. He also testified that he cannot run or even walk very fast. Perez testified that his injuries have made him feel "real bad" emotionally because he is so limited in what he can do. He also testified that as a result of his injuries, he worried about how he is going to pay his bills, whether he would ever walk again, and whether his life would ever return to the way it was before the wreck.

Perez's treating orthopedic doctor, Jeffrey Reuben, testified during the trial. Dr. Reuben testified that as a result of Perez's injuries, he advised Perez in August 2009 that Perez should not be very active and should avoid doing any lifting, bending, stooping, running, or jumping. Dr. Reuben examined Perez again in October 2010. At that time, Perez's pain in both his wrist and his ankle had increased from the levels he was experiencing fourteen months before. According to Dr. Reuben, this pain could be the result of increased activity or the result of some heretofore unknown problem caused by the initial fractures. Dr. Reuben determined that Perez had reduced flexion in his wrist but a normal range of motion in his right ankle and foot. Dr. Reuben went on to testify that he believed Perez was developing arthritic changes in his right wrist that would negatively impact the activities of his daily living.

At the conclusion of the evidence, the case was submitted to the jury, which found in favor of appellees. The jury determined that Barnhart negligently caused the wreck and her conduct rose to the level of gross negligence. The jury awarded appellees compensatory damages and assessed exemplary damages against Barnhart. The trial court signed a final judgment for appellees in the amount of

$606,077.99 and denied Barnhart's motion for new trial. This appeal followed.

ANALYSIS

Barnhart brings nine issues on appeal, which we address in four groups.

I. **The trial court did not abuse its discretion when it admitted Barnhart's medical records and Deputy Hughes' crash report containing the results of Barnhart's blood serum alcohol test.**

In her first two issues, Barnhart asserts the trial court abused its discretion when it admitted her Memorial Hermann Hospital medical records without redacting the results of her blood serum alcohol test and various handwritten notes contained throughout the records. According to Barnhart, the trial court should not have admitted the unredacted medical records because the blood serum alcohol test results were not reliable or trustworthy since appellees did not introduce evidence establishing a complete chain of custody for the blood sample. She also argues the trial court should not have admitted the handwritten notes in the Memorial Hermann medical records because she contends they are hearsay within hearsay. Barnhart goes on to argue that the trial court should not have admitted Deputy Hughes' unredacted crash report because it reported Barnhart's blood alcohol level based on the Memorial Hermann Hospital blood serum alcohol test.

A. **Standard of review**

The decision to admit or exclude evidence lies within the sound discretion of the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Caffe Ribs, Inc. v. State*, 328 S.W.3d 919, 927 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)). When reviewing matters committed to the trial court's discretion, a reviewing

8

court may not substitute its own judgment for that of the trial court. *Id.* Thus, the question is not whether this Court would have admitted the evidence. Rather, an appellate court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (op. on reh'g). Therefore, we examine all bases for the trial court's decision that are suggested by the record or urged by the parties. *Id.*

A party seeking to reverse a judgment based on evidentiary error must prove that the error probably resulted in rendition of an improper judgment, which usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Prestige Ford. Co. v. Gilmore*, 56 S.W.3d 73, 78 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). To determine whether excluded evidence probably resulted in the rendition of an improper judgment, an appellate court reviews the entire record. *Caffe Ribs, Inc.*, 328 S.W.3d at 927 (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001)).

### B. The trial court did not abuse its discretion when it admitted records containing Barnhart's blood alcohol level.

Barnhart's only argument that the trial court abused its discretion when it admitted the unredacted medical records and crash report is that the Rule 803(6) and Rule 803(8) hearsay exceptions should not apply because the reported blood alcohol level found in those documents lacked trustworthiness. *See* Tex. R. Evid. 803(6), (8). Barnhart asserts the blood alcohol level lacked trustworthiness because appellees did not establish a complete chain of custody for the blood sample. In a civil case, however, complaints about the failure to introduce evidence establishing a complete chain of custody for the sample used in a blood

9

alcohol test go to the weight to be given the evidence, not to its admissibility. *See Missouri-Kansas-Texas R.R. Co. v. May*, 600 S.W.2d 755, 756 (Tex. 1980) (stating complaints about report's failure to identify person taking blood sample and security measures taken to protect sample from contamination go to weight and credibility of the record, not to its admissibility as a business record); *March v. Victoria Lloyds Ins. Co.*, 773 S.W.2d 785 788 (Tex. App.—Fort Worth 1989, writ denied).

To the extent Barnhart asks this Court to extend the chain-of-custody requirements found in Texas criminal jurisprudence to those civil cases where the plaintiff seeks exemplary damages, we conclude she did not preserve that argument for our review because she did not ask for a limiting instruction when the test result was admitted. Barnhart argues the criminal chain of custody requirements should apply here because gross negligence and exemplary damages require a unanimous verdict and clear and convincing evidence—standards that approach the standards found in criminal law. In making this argument, however, she concedes that the blood alcohol test result was admissible for purposes of appellees' negligence claims because the burden of proof on those claims is only by a preponderance of the evidence. When evidence is admissible for one purpose, but not another, Texas Rule of Evidence 105 requires the opponent of the evidence to request an instruction from the trial court limiting the scope of the evidence. Tex. R. Evid. 105. The rule further provides that "in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal." *Id.* Because Barnhart did not ask the trial court for a limiting instruction, she cannot demonstrate the trial court abused its discretion when it admitted the blood alcohol test results for all purposes. *See Barber v. Bison Bldg. Materials, Ltd.*, No. 14-07-00566-CV, 2008 WL 4787108 *5

10

(Tex. App.—Houston [14th Dist.] Nov. 4, 2008, no pet.) (mem. op.) (when evidence is admissible for one purpose but not another, the onus is on the objecting party to request a limiting instruction to restrict the jury's consideration of the evidence to the proper purpose).

**C.    The trial court did not abuse its discretion when it admitted the handwritten part of the medical records over Barnhart's hearsay objection.**

Barnhart also complains about the trial court's admission of Plaintiff's Exhibit 18, Barnhart's Memorial Hermann Hospital emergency room medical records, without redacting the handwritten notes that hospital staff made on preprinted hospital forms while treating Barnhart. The challenged handwritten notes include comments that Barnhart appeared intoxicated, was uncooperative, and had to be restrained by hospital staff in order to be treated for her injuries. In Barnhart's view, these handwritten notes are hearsay within hearsay and inadmissible because there is no indication who wrote the notes or whether they had personal knowledge of the event or condition, rendering the notes untrustworthy. We disagree.

Rule 803(6) of the Texas Rules of Evidence creates an exception to the hearsay rule for

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10),[3] unless the source of

---

[3] Rule 902(10) of the Texas Rules of Evidence allows business records to be self-authenticated and admissible at trial under Rule 803(6) if they are accompanied by an affidavit prepared by the custodian of records for the entity keeping the records as long as the affidavit

11

information or the method or circumstances of preparation indicate lack of trustworthiness.

Tex. R. Evid. 803(6).

The challenged handwritten notes are found within medical records that were accompanied by an affidavit prepared by the custodian of records for Memorial Hermann Hospital in compliance with Rule 902(10). *See* Tex. R. Evid. 902(10). The custodian's affidavit provided that all 34 pages of records contained in Plaintiff's Exhibit 18 were business records of Memorial Hermann Hospital that were kept in the regular course of the hospital's business and that the records were made by an employee, representative, or a physician on the hospital's medical staff who had personal knowledge of the act, event, or condition being recorded. There is no requirement that the custodian preparing the affidavit be the creator of the records or have personal knowledge of the information recorded in the document but only knowledge of how the records were prepared. *In re E.A.K.*, 192 S.W.3d 133, 142 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

As Rule 803(6) makes clear, the hearsay exception applies to all business records regardless of their form. *See* Tex. R. Evid. 803(6). The fact that some parts of the challenged records were handwritten notes on preprinted forms designed to be filled in by the hospital's staff while evaluating and treating emergency room patients does not take them outside of the business records hearsay exception, so long as all requirements of that exception are met. *See In re E.A.K.*, 192 S.W.3d at 142 (stating record custodian's testimony and the face of the challenged document support conclusion that the record was created by the entity claiming the document as a business record). Here, the challenged records, along with the business records affidavit, establish that the handwritten notes were made

---

addresses the requirements found in Rule 803(6). *See* Tex. R. Evid. 902(10)(a).

by Memorial Hermann Hospital staff while treating Barnhart in the emergency room. Barnhart has not shown that the handwritten nature of these notes renders them untrustworthy. We therefore conclude the trial court did not abuse its discretion when it overruled Barnhart's hearsay within hearsay objection and admitted Plaintiff's Exhibit 18 without redacting the handwritten notes.

Having addressed and rejected each argument raised in Barnhart's first two issues, we overrule those issues.

## II. Factually sufficient evidence supports the jury's award of physical impairment damages to Morales and Perez.

Barnhart, in her third issue, challenges the factual sufficiency of the evidence supporting the jury's award of $15,000 past physical impairment damages to Morales. In her fourth issue, Barnhart contends the evidence is factually insufficient to support the jury's award of $20,000 in future physical impairment damages to Perez. Because these issues both address the factual sufficiency of evidence supporting physical impairment damages, we address them together.[4]

### A. Standard of review and applicable law

In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When a party challenges the factual sufficiency of the evidence supporting a finding for which it

---

[4] Barnhart, in both issues, asserted in the alternative that the physical impairment damages found by the jury were excessive. Barnhart made no argument, much less one containing citations to the record and appropriate legal authority, in support of that assertion. We therefore conclude she has waived these contentions due to inadequate briefing. *See* Tex. R. App. P. 38.1(i).

13

did not have the burden of proof, we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ellis*, 971 S.W.2d at 407; *Nip v. Checkpoint Systems, Inc.*, 154 S.W.3d 767, 769 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). This Court is not a factfinder. *Ellis*, 971 S.W.2d at 407. Instead, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Pascouet*, 61 S.W.3d at 615–16. Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would also support a different result. *Id.* If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict; we need not do so when affirming a jury's verdict. *Gonzalez v. McAllen Med. Ctr., Inc.,* 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

The jury was asked to determine an amount that would reasonably compensate Morales and Perez for various elements of damages including physical impairment sustained in the past and that in reasonable probability would be sustained in the future. The jury was instructed not to include damages found in response to one element in another element of damages. The jury was also instructed that if a word was used in the charge in a way that was different from its ordinary meaning, the trial court would provide a correct legal definition. Because the charge did not define physical impairment, we measure the sufficiency of the evidence against the commonly-understood meaning of physical impairment. *See Kroger Co. v. Brown*, 267 S.W.3d 320, 322–23 (Tex. App.—Houston [14th Dist.]

14

2008, no pet.) (citing *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000)).

*The Merriam-Webster Dictionary, New Edition* defines physical as "of or relating to the body." THE MERRIAM-WEBSTER DICTIONARY 543 (New Edition 2004). The same dictionary defines impair to mean "to diminish in quantity, value, excellence, or strength." *Id.* at 359. More generally, Texas courts have recognized that physical impairment damages can compensate for physical injuries that affect the plaintiff's activities or lead to loss of enjoyment of life. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 765–66, 772 (Tex. 2003). With that understanding of the meaning of physical impairment, we turn to the question whether factually sufficient evidence supports the jury's determination of Morales and Perez's physical impairment damages.

**B.  The evidence supporting Morales's past physical impairment damages is factually sufficient.**

In support of her contention that the evidence is factually insufficient, Barnhart cites evidence indicating that Morales, despite her injuries, continued working after the wreck, lifted objects, and even performed all tasks that the incapacitated Perez required in the weeks following the wreck. In Barnhart's view, this evidence renders the jury's award of past physical impairment damages to Morales factually insufficient.

The evidence in the record establishes that Morales suffered two herniated discs in her lower back as a result of the accident and that they caused Morales a great deal of pain. Although we recognize that the jury awarded Morales damages for physical pain and mental anguish, there is also evidence that the herniations and resulting pain affected Morales's daily life in several ways. This evidence includes Morales's testimony that prior to the accident she used to spend time with her children at the park, but she could no longer do that as a result of her back pain.

15

Morales also testified that she can no longer lift heavy objects because of her back pain. The record also reveals evidence that the pain resulting from her herniated discs (1) prevented her from walking more than one-quarter mile, (2) made it too painful to sit for more than 30 minutes or to drive for more than an hour, (3) eliminated her social life, (4) eliminated her sex life, and (5) negatively affected her sleep. While Barnhart is correct that the record indicates Morales carried on with aspects of her life after the wreck, the jury also heard Morales explain that she had no choice but to continue working to provide for her family despite her painful back. The jury could also infer from the evidence that Morales took care of Perez out of necessity despite the pain she was experiencing.

It was the jury's responsibility to resolve any conflicts in the evidence and to judge the credibility of the witnesses and the weight to be given their testimony. *Kamat v. Prakash*, 420 S.W.3d 890, 904 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Having examined all of the evidence in the record, we conclude the jury's award of past physical impairment damages to Morales was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Barnhart's third issue.

### C. The evidence supporting Perez's future physical impairment damages is factually sufficient.

In her fourth issue, Barnhart asserts the evidence is factually insufficient to support the jury's award of $20,000 to Perez for physical impairment he would sustain in the future. In this issue, Barnhart points to evidence that Perez eventually returned to work after the wreck as well as short videos taken by a private investigator showing Perez carrying a laundry basket through a parking lot without limping and "without so much as a grimace or anguish on his face." Barnhart also discounts the opinion of Perez's treating orthopedic doctor that Perez

16

would likely experience degenerative changes in his wrist as a result of the fracture he suffered in the wreck because, by the time of the trial, the doctor had not seen Perez for nearly a year. Barnhart argues the evidence she cites establishes that Perez was carrying on with his life and renders the evidence supporting the jury's award of future physical impairment damages factually insufficient.

When evaluating the factual sufficiency of the evidence, we consider all the evidence. Therefore, when conducting a factual sufficiency review, we must also take into account evidence supporting the jury's award that Barnhart does not mention in her argument. This evidence includes the undisputed fact that Perez, who is right-handed, broke his right wrist and right ankle in the wreck. It also includes Perez's testimony that he still was experiencing pain at the time of the trial, that he does not have the same of amount of strength as he had before the wreck, and that this has limited his ability to lift things. The jury was entitled to believe this testimony despite the brief video introduced by Barnhart.[5] The jury also heard Perez's testimony that he cannot run or even walk very fast. In addition, the jury heard the testimony of Perez's treating orthopedic surgeon, Dr. Reuben, in its entirety, which is summarized above. This testimony included his determination that Perez had reduced flexion in his wrist, his opinion that Perez was developing arthritic changes in the wrist that would negatively impact the activities of his daily living, and his opinion that in the future Perez would experience degenerative changes in his right wrist that might lead to the wrist having to be fused.

---

[5] The private investigator testified that she was assigned to follow appellees on two days for a total of twenty hours. She further testified that during those twenty hours she took videos for a total time of approximately twenty minutes, the majority of which was done for integrity purposes to verify she was on the job. The actual video shown during the trial lasted less than three minutes and showed Morales carrying a child and Perez carrying a laundry basket.

While there was conflicting evidence on Perez's physical impairment, the jury was entitled to believe the testimony of one witness and not that of another. The jury was also empowered to resolve any inconsistencies in the evidence and any witness's testimony. *Preston Reserve, L.L.C. v. Compass Bank*, 373 S.W.3d 652, 658 (Tex. App.—Houston [14th Dist.] 2012, no pet.). That it resolved any conflicts or inconsistencies in the evidence against Barnhart does not render the evidence factually insufficient. We hold the evidence supporting the jury's future physical impairment award to Perez is factually sufficient and therefore overrule Barnhart's fourth issue on appeal.

**III.  Barnhart may not separately challenge the sufficiency of the evidence of future mental anguish because the jury awarded a lump sum for both future physical pain and mental anguish.**

Barnhart, in her fifth issue, challenges the legal and factual sufficiency of the evidence supporting the jury's award of future mental anguish damages to Morales. In her sixth issue, Barnhart contends the evidence is legally and factually insufficient to support the jury's award of future mental anguish damages to Perez. Because both issues concern the sufficiency of evidence supporting mental anguish damages, we address them together.

Questions five and six of the jury charge asked the jury to determine "what amount of money, if paid now in cash, would fairly and reasonably compensate [each appellee] for [his/her] injuries, if any, that resulted from the occurrence in question?" Each question then submitted various elements of damages, including "physical pain and mental anguish that, in reasonable probability [each appellee] will sustain in the future?" This damage element was then followed by a single answer blank. In question five, the jury awarded a lump sum of $10,000 to Morales for her future physical pain and mental anguish. In question six, it awarded a lump sum of $22,500 to Perez for his future physical pain and mental

anguish.

Barnhart argues on appeal only that the evidence is legally and factually insufficient to support awards of future mental anguish damages to Morales and Perez. As we explain below, however, Barnhart may not separately challenge the sufficiency of the evidence to support awards of mental anguish damages because the jury's awards were for both physical pain and mental anguish, and Barnhart did not object to submitting both damage elements with a single answer blank.

A party must make a timely and specific objection to preserve a complaint of error in broad-form submission. *Thota v. Young*, 366 S.W.3d 678, 691 (Tex. 2012) (citing *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387–89 (Tex. 2000)). In particular, the party must plainly inform the court if it believes there is insufficient evidence to support the inclusion of a specific element of damages in a broad-form question. *Id.* (citing *Harris Cnty. v. Smith*, 96 S.W.3d 230, 236 (Tex. 2002)); *Simmons v. Bisland*, No. 03-08-00141-CV, 2009 WL 961522, at *8 (Tex. App.— Austin April 9, 2009, pet. denied). Similarly, the party must object if it believes valid and invalid elements of damages have been commingled in a single question. *Mariner Health Care of Nashville, Inc. v. Robins*, 321 S.W.3d 193, 212–13 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Barnhart did not object to either question five or question six on the basis that insufficient evidence supported the submission of future mental anguish damages. She also did not object on the basis that questions five and six commingled valid and invalid elements of damages or that these elements of damages should not be submitted together with a single answer blank. Instead, Barnhart objected only that the evidence was insufficient to support the submission of a "[s]ubpart[]" or "line" containing both "physical pain and mental anguish in the future." Nothing about this objection was specific to mental anguish or placed

19

the trial court on notice of a complaint that the element of future mental anguish damages should not be submitted in a single broad-form submission along with future physical pain because there was no evidence of the element of future mental anguish. *Cf. Texas Comm'n on Human Rights v. Morrison*, 381 S.W.3d 533, 536 (Tex. 2012) (holding defendant's objection to lumping different actions together was sufficient to place trial court on notice that broad-form question submitted valid and invalid theories of liability even though defendant did not mention *Casteel*).

Because she did not object to the submission of questions five and six on this basis, Barnhart is limited to challenging the sufficiency of the evidence supporting the lump-sum award for physical pain and mental anguish to Morales and Perez. *Mariner Health Care*, 321 S.W.3d at 211; *Ake v. Monroe*, No. 04-05-00751-CV, 2006 WL 3017181, at *4 (Tex. App.—San Antonio Oct. 25, 2006, no pet.) (mem. op.) (citing *Thomas v. Oldham*, 895 S.W.2d 352, 359–60 (Tex. 1995)); *Brookshire Bros., Inc. v. Lewis*, 997 S.W.2d 908, 921–22 (Tex. App.—Beaumont 1999, pet. denied); *Haryanto v. Saeed*, 860 S.W.2d 913, 922 (Tex. App.—Houston [14th Dist.] 1993, writ denied). On appeal, Barnhart does not challenge the sufficiency of the evidence supporting the damage awards for future physical pain, nor does she challenge the sufficiency of the evidence supporting the lump-sum awards for future physical pain and mental anguish as a whole. We therefore overrule her fifth and sixth issues. *Ake*, 2006 WL 3017181, at *4 (rejecting legal and factual sufficiency challenges because appellant did not challenge on appeal sufficiency of evidence supporting lump-sum amount awarded for physical pain and mental anguish); *Haryanto*, 860 S.W.2d at 922 (same).

20

**IV.    Barnhart failed to preserve her argument that the evidence is factually insufficient to support the jury's gross negligence findings in her motion for new trial.**

Barnhart, in her seventh issue, asserts the evidence is factually insufficient to support the jury's gross negligence findings in response to jury questions 7 and 8. A complaint that the evidence is factually insufficient to support a jury's finding must be preserved through the filing of a motion for new trial. Tex. R. Civ. P. 324(b)(2); Tex. R. App. P. 33.1(a); *Harris Cnty. v. Gibbons*, 150 S.W.3d 877, 881 n.4 (Tex. App.—Houston [14th Dist.] 2004, no pet.). While Barnhart filed a motion for new trial, she did not include any contention that the evidence was factually insufficient to support the jury's gross negligence findings. She has therefore failed to preserve this issue for appellate review. *Gibbons*, 150 S.W.3d at 881 n.4.

**V.    The final judgment's award of exemplary damages is neither excessive nor does it violate Barnhart's constitutional rights.**

In response to Jury Questions 7 and 8 the jury found that Barnhart was grossly negligent. It then determined that $350,000 should be assessed as exemplary damages against Barnhart and awarded to Morales and Perez. Finally, the jury apportioned that exemplary damages award as sixty percent to Perez and forty percent to Morales. The trial court, in its judgment, reduced Perez's exemplary damages to $200,000 to comply with the statutory cap found in the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b)(2) (West 2015) (capping exemplary damages at $200,000). Accordingly, it awarded $200,000 in exemplary damages to Perez and $140,000 to Morales, for a total award of $340,000.

In her eighth issue, Barnhart argues the award of exemplary damages was excessive. In her ninth issue, Barnhart contends the award of exemplary damages

21

violates her constitutional due process rights because it is grossly excessive. We address each issue in turn.

## A. The $340,000 exemplary damages award is not excessive.

Barnhart begins her eighth issue by recognizing that the determination of the amount of exemplary damages to award depends on the facts of the case. She goes on to assert that the evidence in this case does not support the imposition of a $340,000 exemplary damage award against her, making the award excessive. We disagree.

We review the excessiveness of an exemplary damages award as a factual sufficiency challenge. *Ellis*, 971 S.W.2d at 406. We will not set aside an exemplary damages award unless, after reviewing the entire record, we determine the exemplary damages award is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Trans. Ins. Co. v. Moriel,* 879 S.W.2d 10, 30 (Tex. 1994). When determining whether an exemplary damage award is excessive, we consider the following factors: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties; and (5) the extent to which such conduct offends a public sense of justice and propriety. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). The Civil Practice and Remedies Code added an additional factor, the defendant's net worth, to the list. Tex. Civ. Prac. & Rem. Code Ann. § 41.011 (West 2015). The jury charge in this case instructed the jury to consider each of these factors. We must detail the relevant evidence and explain why that evidence either supports or does not support the exemplary damage award in light of these factors. *Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 168 (Tex. App.—Dallas 2011, pet. denied) (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.013 (West 2015)

22

(requiring reviewing court to include in opinion reasons for affirming or reversing an award of exemplary damages)).

The first two factors ask about the nature of the wrong and the character of the conduct involved. While Barnhart argues on appeal that undisputed evidence established that she was not intoxicated the evening of the crash and that she was driving with due care for the safety of herself and others, the jury heard evidence that she was instead driving while intoxicated in violation of the law prior to the crash. This includes evidence that her blood alcohol level at the time of the wreck was .31 percent, almost four times the .08 percent legal limit in Texas. The jury also heard evidence that, to reach such an elevated blood alcohol level, Barnhart had to consume between thirteen and seventeen alcoholic beverages before getting into her vehicle to drive home. The jury also heard evidence that a person with a .28 percent blood alcohol level would have been severely impaired and should not have been driving. They also heard testimony that a person with a .28 percent blood alcohol level would be unable to comprehend that there was a stalled vehicle ahead and react to that information in time to maneuver around the stalled vehicle. Based on this evidence, the jury could have determined that Barnhart's conduct was driving while intoxicated and that her behavior was especially egregious. We conclude the first two *Kraus* factors support the imposition of exemplary damages.

Turning to the third factor, the degree of culpability of the wrongdoer, evidence was admitted that Barnhart was subjectively aware of the serious risks involved when a person drives while intoxicated. Barnhart herself volunteered that she had previously been convicted of driving while intoxicated and had been forced to attend AA and MADD meetings discussing the risks involved when one drives while intoxicated. Barnhart also testified that she was independently aware of the risks involved when someone drives while intoxicated. There was also

23

evidence that, despite her knowledge of the risks involved in driving while intoxicated, Barnhart drank thirteen to seventeen alcoholic beverages before getting behind the wheel of her daughter's car to drive home the evening of the crash. We conclude that, based on this evidence, the jury could reasonably have decided that Barnhart had a high degree of culpability for her actions that day. We hold the third *Kraus* factor supports the imposition of exemplary damages against Barnhart.

The fourth factor addresses the situation and sensibilities of the parties. The evidence established that Barnhart spent a good part of the day of the wreck drinking to celebrate her birthday with twenty acquaintances but chose to get into a car to drive home despite being highly intoxicated. Morales and Perez were travelling home on a busy freeway when their truck broke down. They moved the truck as far out of the lane of traffic as possible and then sent their children away in another car. The evidence also showed that Morales and Perez, rather than abandoning their truck on a busy freeway, elected to stay and then tried to warn oncoming drivers of the hazardous situation by using the truck's emergency flashers and waving them away. There was also evidence that both Morales and Perez suffered painful injuries in the wreck, they were still experiencing injury-related problems at the time of trial, and both were likely to experience pain and future problems related to the injuries they had suffered. Based on this evidence, the jury could have decided that the situation and sensibilities of the parties weighed in favor of Morales and Perez and against Barnhart. The fourth *Kraus* factor supports the imposition of exemplary damages against Barnhart.

The fifth *Kraus* factor examines the extent to which the conduct at issue offends a public sense of justice and propriety. There is a strong public policy in the State of Texas against driving while intoxicated. *See Dabney v. Home Ins. Co.*,

643 S.W.2d 386, 388 (Tex. 1982) (recognizing the existence of a strong public policy against driving while intoxicated and the public's concern over the large number of serious accidents and injuries which result from driving while intoxicated). There was ample evidence that Barnhart was highly intoxicated at the time of the wreck, and the jury could easily have concluded that her behavior offended a public sense of justice and propriety. The fifth *Kraus* factor thus supports the imposition of exemplary damages against Barnhart.

There is no evidence in the record related to the sixth factor, Barnhart's net worth. While evidence of net worth is relevant in determining the amount of exemplary damages to impose on a defendant, it is not required that a plaintiff introduce such evidence. *Durban v. Guajardo*, 79 S.W.3d 198, 210–11 (Tex. App.—Dallas 2002, no pet.). Because a jury is not required to consider evidence of the defendant's net worth before imposing exemplary damages, we conclude the sixth factor does not weigh for, or against, the award of exemplary damages in this case. *See In re Jacobs*, 300 S.W.3d 35, 50 n. 8 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding).

Having reviewed the complete record in light of the *Kraus* factors, we hold the evidence supports the amount of exemplary damages awarded and hold that they are not excessive. We overrule Barnhart's eighth issue.

**B.     The $340,000 exemplary damages award does not violate Barnhart's due process rights.**

Barnhart, in her ninth and final issue on appeal, contends the $340,000 award of exemplary damages violates the Due Process Clause of the Fourteenth Amendment, which prohibits the imposition of grossly excessive or arbitrary punishments on a defendant. *See* U.S. Const. amend. XIV, § 1. The constitutionality of exemplary damages is a legal question, which we review de

novo. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 307 (Tex. 2006). The Supreme Court of the United States has directed us to review an award of exemplary damages for constitutional excessiveness by using three guideposts. *Bennett v. Reynolds*, 315 S.W.3d 867, 873 (Tex. 2010) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568, 575, 580, 583 (1996)). These guideposts are: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the exemplary damages awarded; and (3) the difference between the exemplary damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Id.* "Exacting appellate review" employing these guideposts is necessary to ensure that exemplary damages are "based upon an application of law, rather than a decisionmaker's caprice." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (internal quotation marks omitted).

The first guidepost—the reprehensibility of the defendant's conduct—is the most important. *Id.* at 874 (citing *Gore*, 517 U.S. at 575). Within that first guidepost, we consider five nonexclusive factors: (1) whether the harm inflicted was physical rather than economic; (2) whether the tortious conduct showed an indifference to or a reckless disregard for the health and safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions, not just an isolated incident; and (5) whether the harm resulted from intentional malice, trickery, or deceit, as opposed to mere accident. *Id.* (citing *Campbell*, 538 U.S. at 419; *Gore*, 527 U.S. at 576–77)). One factor alone may not be sufficient to sustain an exemplary damages award on appeal, and the absence of all of them renders an exemplary damages award suspect. *Id.* While a reviewing court must presume that a plaintiff has been made whole for his or her injuries by the compensatory damages award, "exemplary

damages are permitted if the wrongdoing is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.* (quoting *State Farm*, 538 U.S. at 419) (internal quotations omitted).

In the present case, the harm inflicted by Barnhart was physical, not economic. Barnhart's conduct—driving after consuming thirteen to seventeen alcoholic beverages—demonstrates a reckless disregard for the safety of appellees as well as the general driving public. The third factor regarding the financial vulnerability of the plaintiff does not apply to the present case. There was evidence that Barnhart's driving while intoxicated was a repeated rather than isolated occurrence, and therefore the fourth factor is present here. With respect to the fifth factor, while the evidence establishes the wreck was not a mere accident, we conclude the evidence does not establish that it resulted from intentional malice, trickery, or deceit. Given this evidence that three of the five reprehensibility factors are present, we conclude the first guidepost supports the award of exemplary damages. *See Bennett*, 315 S.W.3d at 877 (concluding exemplary damages were warranted when only a single reprehensibility factor was present).

The second guidepost examines the ratio between the exemplary damages and the compensatory damages. *Id.* at 877. While the Supreme Court of the United States has refused to draw a bright-line ratio of exemplary to actual damages, it has said that an exemplary damages "award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425. The judgment awarded Morales and Perez exemplary damages of $340,000 and actual damages totaling $260,703.68. This produces a ratio of 1.3 to 1. We conclude this ratio is within constitutional limits, particularly given that three of the five reprehensibility factors are present.

27

*See McCullough v. Scarbrough, Medlin & Assoc., Inc.*, 435 S.W.3d 871, 915 (Tex. App.—Dallas 2014, pet. denied) (affirming exemplary damages award that slightly exceeded the 4:1 ratio when three out of the five reprehensibility factors were present).

The third guidepost requires an examination of the difference between the exemplary damages awarded by the jury and the civil and criminal penalties authorized or imposed in comparable cases. *Bennett*, 315 S.W.3d at 881–82 (examining criminal penalties due to lack of comparable civil penalty before concluding the third guidepost offered little guidance to the analysis). Barnhart, as a result of driving with a .31 percent blood alcohol level, could have been prosecuted for driving while intoxicated, a Class A misdemeanor. *See* Tex. Penal Code Ann. §§ 12.21, 49.04(d), 49.09(a) (West 2011) (providing that driving while intoxicated is a Class A misdemeanor if the defendant has an alcohol concentration level of 0.15 or higher or if the defendant has been previously convicted of driving while intoxicated). If found guilty, Barnhart could be fined up to $4,000 and sentenced to up to one year in jail. *Id.* While it is difficult, if not impossible, to reasonably compare a monetary penalty with any term of imprisonment, the Penal Code makes it clear that driving while intoxicated is a serious offense. *See Bennett*, 315 S.W.3d at 881 n.73 (cautioning against comparing a monetary penalty with a period of incarceration). In light of the seriousness of Barnhart's conduct, we conclude the third guidepost supports the exemplary damages award.

After evaluating the evidence in light of the guideposts, we hold the exemplary damages awarded here do not cross the line of constitutional propriety and therefore do not violate Barnhart's Due Process rights. We overrule Barnhart's ninth issue.

## CONCLUSION

Having overruled each of the issues raised by Barnhart in this appeal, we affirm the trial court's judgment.

/s/        J. Brett Busby
Justice

Panel consists of Justices Boyce, Busby, and Wise.