**Affirmed and Memorandum Opinion filed December 5, 2024**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00667-CV

### RISE PETROLEUM INVESTMENTS LLC, Appellant

### V.

### WORKOVER SOLUTIONS INC., Appellee

**On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 1185084**

## MEMORANDUM OPINION

Appellant Rise Petroleum Investments, LLC appeals from a judgment signed following a jury trial in two issues. Rise argues in its first issue that the trial court abused its discretion when it allegedly imposed death penalty sanctions on Rise. In its second issue, Rise asserts that the trial court abused its discretion when it allowed appellee Workover Solutions, Inc.'s (Workover) witness to testify regarding information Rise argues was "entirely outside of his personal knowledge." Because we conclude that the trial court did not impose a death

penalty sanction on Rise and did not abuse its discretion when it permitted Workover's witness to testify, we overrule Rise's issues and affirm the trial court's final judgment.

## BACKGROUND[1]

Mark Miller founded Workover and currently serves as its Chief Executive Officer. Miller is a mechanical engineer and is personally involved in all of Workover's projects. Miller described Workover as a fully-integrated downhole tool company that focuses on subsurface tools operating inside a well. According to Miller, Workover is not called out when a well is producing at full capacity. Instead, a customer calls Workover when there is an issue inside the well. Workover executes a Master Services Agreement with all customers seeking Workover's services.

Once on the customer's site, Workover does not own or operate the coiled tubing that goes down into the well. Instead, Workover owns the tool attached to the end of the coiled tubing. Workover personnel do not operate their tool inside the well, instead they offer recommendations on operating Workover's tools to the customer's on-site representative, the "company man." Miller described a "company man" as the representative on location who represents the customer. Miller explained that a company man can be an employee of the customer but normally in the United States they are a contractor. Miller continued that the company man is the customer's decision maker on the job site. The company man oversees the operation, makes any decisions, and handles communications with the customer's office.

---

[1] Rise has not challenged the sufficiency of the evidence supporting the judgment. We therefore include only those facts necessary to provide background for the issues raised in this appeal.

Ronnie Patton, Rise's company man at the Cuellar Number 1 well, contacted Workover about a cleanout job on the well. Miller described a cleanout as removing soft debris, scale, sand, and other material obstructing a well and interfering with production. Soon thereafter, Brent Franklin, Rise's president, signed a Master Services Agreement with Workover. Workover arrived at the Cuellar Number 1 well the next day. Workover worked at the wellsite for six days before Rise terminated their services. Miller admitted that Workover did not cure the obstruction in the well. Patton signed Workover's service ticket accepting Workover's estimated charges for the work performed on the well. The estimated charges totaled $43,424.65. Workover sent an invoice to Rise a week later seeking payment for the work it performed on Rise's well. The invoice totaled $45,183.82, which included the amount on Workover's service ticket plus sales tax. Rise did not pay the invoice.

Workover sued Rise alleging causes of action for breach of contract, unjust enrichment, quantum meruit, and a suit on a sworn account. Rise filed an answer which included a verified denial prepared by Rise's President, Brent Franklin. Among other things, Franklin stated that Workover "was hired by someone unauthorized to make such a dealing on behalf of" Rise, "furnished the wrong materials," and "completed work not commissioned by" Rise, and "never provided [Rise] with a field ticket."

During discovery Workover sought to depose Franklin to explore the basis of the statements he made in his verification denying Workover's sworn account. Workover's counsel consulted with Rise's attorney on Franklin's availability. Rise notified Workover that Franklin would be available the first week of September. Workover noticed Franklin's deposition for September 2, 2022. The notice was served on July 29, 2022. Then, on August 31, 2022, Rise moved to quash the

deposition. Rise filed the motion after the deadline had passed for automatic quashing of the deposition. *See* Tex. R. Civ. P. 199.4 (providing that a deposition is automatically stayed if motion to quash is filed within three business days after service of the deposition notice). The deposition moved forward. So, when, on September 2, 2022, Franklin did not appear for his deposition, Workover obtained a certificate of non-appearance from the court reporter.

Workover filed a motion for sanctions pursuant to Rules 13, 215.1 and 215.2 of the Rules of Civil Procedure against Rise for Franklin's failure to appear at the scheduled deposition. In its motion Workover asked the trial court to sanction Rise: (1) in the amount of $9,250 in attorney fees incurred by Workover as a result of Franklin's failure to appear at the scheduled deposition; and (2) by barring Franklin from testifying during the trial of the dispute. Workover set the motion on the trial court's submission docket and Rise did not file a response. The trial court granted Workover's motion and it ordered Rise to pay Workover $3,000 in sanctions. The trial court's sanctions order did not specify which Rule the sanctions were levied under.

Prior to the trial commencing, Workover filed objections to Rise's proposed witness list which included seven fact witnesses and one expert witness. Workover objected to, among other things, Franklin testifying as a fact witness. Workover argued Franklin should be prohibited from testifying because he had not appeared for his deposition. The trial court addressed Workover's objection during its pre-trial conference. While it had not been expressly addressed in the sanctions order, the trial court made clear that it had previously struck Franklin from testifying as a result of his non-appearance at his deposition.[2] The trial court continued that Rise

---

[2] The trial judge indicated during the second day of the trial that Franklin was struck during an earlier pre-trial hearing which does not appear in the appellate record.

had agreed to the deposition date and then Franklin failed to appear.

The pre-trial conference also addressed the number of witnesses each side planned to call to testify. Rise represented to the trial court that it intended to call six witnesses, including Scott Smith, a managing partner and partial owner of Rise.[3] Rise represented that Smith was both a fact witness and a non-retained expert witness. Workover objected to Smith testifying due to Rise's alleged failure to properly disclose information required by the discovery rules. The trial court took Workover's objection to Smith under advisement. Rise also had 59 proposed exhibits. Workover did not object to any of the proposed exhibits and they were admitted during the pre-trial conference. Workover eventually withdrew its objection to Smith testifying as a fact witness.

The trial commenced two weeks later. Workover called Miller to testify as the first witness. Miller testified for the entire first day of the trial. The second day of trial began with a conference outside the jury's presence to discuss the trial proceedings for the day.[4] During this conference Workover informed the trial court that it would rest its case that morning after its counsel testified regarding attorney's fees. The trial court then asked Rise how many witnesses it had that day. Rise's counsel informed the trial court that, rather than the number of witnesses included on its witness list, it would "realistically" call only three or four. Rise's counsel then revisited the subject of allowing Franklin to testify. The trial court refused to revisit its ruling excluding Franklin from testifying. The trial court then reviewed the reasons for its ruling: (1) Franklin failed to appear for his deposition; (2) Rise not making Franklin available for a deposition after Workover

---

[3] Rise had initially included Franklin in its trial witness list. This prompted Workover's objection to his inclusion in the testifying witness list and the trial court clarifying that Franklin was excluded because he had not appeared at his properly-noticed deposition.

[4] Both sides had previously informed the trial court that the trial would take three days.

5

took a certificate of non-appearance; and (3) Rise's counsel's misleading statements to the trial court during the sanctions proceedings regarding the procedural background around the deposition.[5] The trial court clarified that it had not imposed death penalty sanctions against Rise because it had not struck Rise's pleadings nor precluded Rise from calling any other witnesses to defend against Workover's claims.

After the conference, the trial recommenced and Workover called its counsel to testify regarding Workover's fees. Workover then rested its case. The trial court asked Rise to call its first witness. At this point, Rise's attorney, without calling any witnesses, announced the "Defense rests." The case was then submitted to the jury, which returned a unanimous verdict awarding Workover $45,183.82 in actual damages and $142,000 in attorney's fees. The trial court signed a final judgment consistent with the jury's verdict. This appeal followed.

ANALYSIS

Rise raises two issues in this appeal. We address them in order.

I.      The trial court did not impose a death penalty sanction on Rise.

In its first issue Rise argues that the trial court's decision to exclude Franklin from testifying functioned as a death penalty sanction because it effectively eliminated any defense by Rise. We disagree.

We review a trial court's imposition of sanctions for an abuse of discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). A trial court is given the broadest discretion in imposing sanctions and in choosing the appropriate sanction. *White v. Bath*, 825 S.W.2d 227, 229 (Tex. App.— Houston [14th Dist.] 1992, writ denied). The test for an abuse of discretion is not

_____

[5] Rise's trial counsel was not the same as the attorneys representing Rise at the time Franklin failed to appear for his deposition.

6

whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the trial court acted without reference to any guiding rules or legal principles. *Cire v. Cummings*, 134 S.w.3d 835, 838–39 (Tex. 2004). A discovery sanctions order is arbitrary or unreasonable if the sanctions imposed by the trial court do not further one of the purposes of discovery sanctions, namely, to secure the parties' compliance with discovery rules, to deter other litigants from violating the discovery rules, and to punish parties who violate the discovery rules. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986).

Rule 215.2 of the Texas Rules of Civil Procedure authorizes a trial court to sanction a party for failure to comply with a discovery order or request. Tex. R. Civ. P. 215.2. Under this rule the permissible sanctions include charging all or a portion of the discovery expenses or taxable court costs against the offending party and prohibiting the offending party from introducing designated matters into evidence. *Id.* A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). The Texas Supreme Court has defined death penalty sanctions as "sanctions that terminate a party's right to present the merits of its claims." *State v. Bristol Hotel Assets Co.*, 65 S.W.3d 638, 647 (Tex. 2001). Additionally, any sanction that is case determinative may constitute a death penalty sanction. *In re First Transit, Inc.*, 499 S.W.3d 584, 591 (Tex. App.— Houston [14th Dist.] 2016, orig. proceeding). Examples of death penalty sanctions include striking a party's pleadings, dismissing a party's action, or rendering a default judgment against the party for abusing the discovery process. *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 918.

We begin with Rise's assertion that the trial court imposed death-penalty

7

sanctions when it prohibited Franklin from testifying. Here, the trial court prohibited Franklin from testifying because he failed to appear for an agreed deposition and because Rise's counsel made misleading statements about the procedural background of the deposition. The trial court did not strike Rise's pleadings nor prohibit Rise from calling any other witnesses. Further, the trial court did not prohibit Rise from admitting exhibits into evidence, which it did. Prior to the start of the trial, Rise listed numerous witnesses. Once the trial commenced and after the trial court confirmed that it would not change its ruling on Franklin testifying, Rise informed the trial court that it "realistically" expected to call only three or four witnesses. The fact that Rise elected to not call any of the mentioned three or four witnesses was through no action of the trial court. Because the trial court excluded a single witness and did not prohibit Rise from presenting its case through other available witnesses and its admitted exhibits, we conclude it did not levy death penalty sanctions against Rise. *See State Farm Fire & Cas. Co.*, 88 S.W.3d 313, 326 (Tex. App.—San Antonio 2002, pet. denied) ("Where the exclusion of expert testimony is only an inconvenience that impairs the presentation of a party's case but does not preclude a trial on the merits, the exclusion of evidence is not a death penalty sanction."). We overrule Rise's first issue.

## II. The trial court did not abuse its discretion when it overruled Rise's objections to Mark Miller's testimony.

Rise argues in its second issue that the trial court abused its discretion when it overruled Rise's objection to Mark Miller testifying to information not within his personal knowledge. Rise continues that Miller's testimony was hearsay in its entirety. We address these contentions in order.

We review the trial court's decision to admit or exclude evidence under

8

an abuse of discretion standard. *Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 610 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). A trial court exceeds its discretion when it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Barnhart v. Morales*, 459 S.W.3d 733, 742 (Tex. App.—Houston [14th Dist.] 2015, no pet.). When reviewing matters committed to the trial court's discretion, a reviewing court may not substitute its own judgment for that of the trial court. *Barnhart*, 459 S.W.3d at 742. Thus, the question is not whether this court would have admitted the evidence. *Id.* Rather, an appellate court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Jones v. Mattress Firm Holding Corp.*, 558 S.W.3d 732, 737 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

We turn first to Rise's contention that the trial court abused its discretion when it allowed Miller to testify to information not within Miller's personal knowledge. Rise asserts, without citation to the record, that Miller testified he had no personal knowledge of the events at issue in the dispute and the trial court abused its discretion when it permitted him to then testify. Having reviewed the entire record we could not find any such testimony by Miller. Instead, Miller testified, without objection, that he was personally involved in every project Workover works on. Therefore, the trial court could have reasonably determined that Miller was testifying based on his own personal knowledge. We overrule Rise's contention that the trial court abused its discretion when it permitted Miller to testify.

Rise next argues that the trial court abused its discretion when it admitted Miller's testimony because it was entirely based on hearsay. In making this argument Rise does not cite to any locations in the record where it lodged a

9

hearsay objection to specific portions of Miller's testimony. *See* Tex. R. App. P. 38.1(i) (requiring appellant to include citations to the record); *Univ. Gen. Hosp., LP v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 557 n.6 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (explaining appellate courts are not required to make an independent search of a voluminous record for evidence supporting a party's position); *C & D Brokerage Co., Inc. v. Compass Bank*, No. 14-02-00484-CV, 2003 WL 1748414, *5 (Tex. App.—Houston [14th Dist.] April 3, 2003, pet. denied) (mem. op.) ("We are not required to search a voluminous record for evidence raising a fact issue without guidance from appellant."). We conclude that Rise has not preserved this complaint because it has not pointed to where in the record it lodged hearsay objections to specific portions of Miller's testimony and the trial court overruled those objections. *See* Tex. R. App. P. 33.1(a); *Service Corp. Intern. v. Guerra*, 348 S.W.3d 221, 234 (Tex. 2011) ("Error is preserved with regard to a ruling that admits evidence if the opponent of the evidence makes a timely, specific objection and obtains a ruling."). We overrule Rise's second issue on appeal.

## CONCLUSION

Having overruled Rise's issues on appeal, we affirm the trial court's judgment.


/s/      Jerry Zimmerer
         Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.