**PRESTIGE FORD CO. LIMITED PARTNERSHIP, Appellant,**

v.

**Elliot R. GILMORE, Appellee.**

No. 14–99–01346–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 7, 2001.

Rehearing Overruled July 19, 2001.

James D. Blume, Jennifer S. Stoddard, Dallas, for appellants.

Richard S. London, Houston, for appellee.

Panel consists of Justices YATES, FOWLER, and WITTIG.

## OPINION

FOWLER, Justice.

Appellant, Prestige Ford Co. Limited Partnership ("Prestige Ford"), appeals from an adverse judgment in favor of appellee, Elliot R. Gilmore, on Gilmore's claim that he was discharged because of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1999 & Supp.2000), and the Texas Commission on Human Rights Act (TCHRA), TEX. LABOR CODE ANN. §§ 21.001–.556 (Vernon 1996 & Supp. 2001). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 24, 1997, Gilmore was hired by Prestige Ford to sell cars at a dealership in Humble, Texas. Gilmore attended classroom training from January 27 to January 31, and began working on the lot on February 1, 1997. According to Gilmore, from his first day after training, Gilmore was subjected to abuse from the sales manager, Geronimo Gianelli.[1] Among other things, Gilmore testified that Gianelli constantly directed derogatory epithets toward him, referring to him as, among other things, "dumb ass," "asshole," and "old man." Gilmore testified that he complained about Gianelli's conduct to his immediate supervisor, Jeff Vogel, who only suggested that Gilmore "[t]ry to stay away

---

1. In his petition and his brief, Gilmore identifies the sales manager as Geronimo (or Geronomo) Gramelle. From the record, it appears that the individual's name is actually Geronimo Gianelli.

from him." The abusive behavior continued, however, and on February 5, 1997, following a physical confrontation, Gilmore again met with Vogel to complain. During Gilmore's meeting with Vogel, Gianelli again confronted Gilmore, ultimately telling him, "You're out of here. Hit the door." At all relevant times, Gilmore was 58 years old.

At trial, the jury found the following: (1) age was a cause of Prestige Ford's discharge of Gilmore, without which cause Gilmore would not have been terminated; (2) the decision to discharge Gilmore because of his age was willful; and (3) Gilmore would have earned $18,400 in back pay. The trial court entered judgment awarding Gilmore $18,400 in actual damages and $18,400 in liquidated damages,[2] plus attorneys' fees. Prestige Ford moved for a new trial, which the court orally denied (and later memorialized in a signed order).

On appeal, Prestige Ford argues that the trial court erred in six ways: (1) during closing argument, allowing Gilmore's counsel to show the jury a demonstrative exhibit containing unproven elements of damages; (2) admitting as evidence a newspaper advertisement that Gilmore had not produced in discovery; (3) refusing to admit a report listing Prestige Ford employees and their birthdays; (4) denying Prestige Ford's motion for directed verdict; (5) granting Gilmore's motion for new trial after having entered judgment in favor of Prestige Ford; and (6) denying the bulk of Prestige Ford's motion for protection against a subpoena duces tecum issued by Gilmore's counsel. Prestige Ford also asserts that the jury's willfulness finding was against the great weight and preponderance of the evidence.

**2.** Under the ADEA, a successful plaintiff is entitled to liquidated damages in an amount equal to the jury's award of back pay. *See*

### GILMORE'S MOTION FOR NEW TRIAL

■ We address first Prestige Ford's sixth issue. Prestige Ford argues that the trial court erred in granting Gilmore's motion for new trial following the entry of a take-nothing judgment in favor of Prestige Ford. A trial court enjoys broad discretion in granting a new trial, before or after judgment. *Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (orig.proceeding) (per curiam). The court originally entered judgment because Gilmore failed to respond to Prestige Ford's motion for summary judgment. Following the entry of an unopposed summary judgment, a new trial should be granted when (1) the failure to respond to the motion for summary judgment was not intentional or the result of conscious indifference, but the result of an accident or mistake; (2) the non-movant's motion for new trial alleges facts and contains proof sufficient to raise a material question of fact; and (3) the motion for new trial demonstrates that the granting thereof will occasion no delay or otherwise work an injury to the summary judgment movant. *Medina v. Western Waste Indus.,* 959 S.W.2d 328, 331 (Tex.App.— Houston [14th Dist.] 1997, pet. denied). The trial court's ruling on a motion for new trial will not be disturbed on appeal absent an abuse of discretion. *Superior Packing, Inc. v. Worldwide Leasing & Fin., Inc.,* 880 S.W.2d 67, 71 (Tex.App.— Houston [14th Dist.] 1994, writ denied).

■ We find that the trial court did not err in granting the motion for new trial. Prestige Ford's sole argument on appeal is that Gilmore did not prove that his failure to respond was due to mistake or accident,

*Smith v. Berry Co.,* 165 F.3d 390, 395 (5th Cir.1999).

rather than intentional or a result of conscious indifference.[3] In support of this argument, Prestige Ford cites *Medina,* in which this court affirmed the trial court's denial of a motion for new trial. In *Medina,* the party seeking a new trial argued that his attorney failed to respond to the summary judgment motion because he was moving his law office and had to settle his recently-deceased mother-in-law's affairs. We found that, despite the complicated state of his personal affairs, the attorney had ample time to either respond to the motion or request more time to do so. *Medina,* 959 S.W.2d at 331. Thus, the party did not meet his burden of establishing that his failure to respond was not intentional or the result of conscious indifference, as opposed to the result of an accident or mistake. *Id.*

Here, Gilmore's attorney submitted an affidavit to the trial court explaining that his firm mistakenly did not calendar the response date for Prestige Ford's motion for summary judgment.[4] Gilmore's attorney also stated that his firm had been actively trying to schedule the deposition of a Prestige Ford representative relating to the defense of limitations, which was the basis for Prestige Ford's motion. On these facts, the trial court did not abuse its discretion in finding that Gilmore's failure to respond to the summary judgment motion was the result of an accident or mistake, and was not intentional or the result

of conscious indifference. We overrule Prestige Ford's sixth issue.

### EVIDENTIARY RULINGS

■ In its first three issues, Prestige Ford alleges that the trial court erred with respect to three evidentiary rulings during the course of trial. The admission and exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A party seeking to reverse a judgment based on evidentiary error must prove that the error probably resulted in an improper judgment, which usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Id.* at 753–54. We make this determination by reviewing the entire record. *Id.* at 754.

### *Demonstrative Exhibit on Gilmore's Damages*

■ Prestige Ford first asserts that the trial court erred by allowing Gilmore's attorney, over Prestige Ford's objection, to show the jury a demonstrative exhibit entitled "Elliot Gilmore's Damages" during closing argument. Prestige Ford argues (1) the exhibit was never admitted in evidence; and (2) the exhibit, which purports to calculate Gilmore's damages, includes elements of damages that were neither pleaded nor proven.

---

3. In its brief, Prestige Ford also states, without any further argument, that "Gilmore must set up a meritorious defense to be entitled to a new trial in this case," citing *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939). *Craddock,* however, dealt with a motion for new trial following a default judgment. This requirement from *Craddock* does not apply when reviewing a motion for new trial following an unopposed summary judgment. *See Medina,* 959 S.W.2d at 331 n. 3.

4. Gilmore's petition named as defendants Prestige Ford and Prestige Ford Garland Limited Partnership ("Prestige Ford Garland"). Both defendants, through the same counsel, moved for summary judgment and filed a notice of hearing on the same date. According to Gilmore's attorney, his firm mistakenly calendared only the response date for Prestige Ford Garland's motion. While the summary judgment motions were pending, Prestige Ford Garland was non-suited.

Prestige Ford's first argument, that the exhibit itself was not admitted in evidence, is of no merit because the exhibit was a demonstrative. A trial court does not abuse its discretion by permitting evidence to be summarized by means of a visual aid. *Bobo v. State*, 757 S.W.2d 58, 64 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). However, if a demonstrative exhibit contains factual information that is not in evidence, it would be error to show the exhibit to the jury. A party may not make factual statements during closing argument, whether orally or visually, without any reference to or inference from the evidence. *See Warren Petroleum Corp. v. Pyeatt*, 275 S.W.2d 216, 218–19 (Tex.Civ. App.—Texarkana 1955, writ ref'd n.r.e.).

During the second or "rebuttal" portion of his closing argument, Gilmore's counsel allegedly showed the exhibit to the jury while explaining "how you do the numbers." The exhibit purports to calculate Gilmore's "Back Pay" by adding four numbers: two representing Gilmore's lost salary and commissions during the time he was "out of work" ($18,400 in lost salary and $14,400 in lost commissions), and two representing the difference in Gilmore's salary for different time periods after he took another job (which totaled $22,566.66). Prestige Ford complains that the last two numbers set forth a claim for impaired earning capacity, which was neither pleaded nor proven by Gilmore. However, the jury returned a verdict for $18,400, the same amount shown on the exhibit as Gilmore's lost salary for the time he was out of work. It is undisputed that this amount of damages was supported by the evidence. Thus, regardless of any purported error, Prestige Ford failed to establish that showing this demonstrative exhibit to the jury during closing argument probably resulted in an improper judgment. Accordingly, we overrule Prestige Ford's first issue.

## Newspaper Advertisement

In its second issue, Prestige Ford complains that the trial court erroneously admitted a January 19, 1997 classified advertisement placed by Prestige Ford in the *Houston Chronicle*. Prestige Ford objected to the admission of this exhibit, arguing that it was never identified or produced in response to discovery requests, and therefore should have been excluded under Rule 193.6 of the Texas Rules of Civil Procedure. We need not consider whether this exhibit was properly produced, however, because it is plainly cumulative of other evidence on the same issue. *See Blonstein v. Blonstein*, 831 S.W.2d 468, 473 (Tex. App.—Houston [14th Dist.] ) ("Admission of exhibits which are merely cumulative of testimony is at worst harmless error and is not a basis for reversal."), *writ denied*, 848 S.W.2d 82 (Tex.1992) (per curiam).

Prestige Ford complains that the advertisement's admission was prejudicial because the jury relied on it to determine that Gilmore was being paid a salary of $575 per week. Our review of the record shows that there was considerable evidence on this point aside from the advertisement. Gilmore testified that when he was hired, he was promised a salary of $575 per week, plus commissions. Because none of Prestige Ford's witnesses at trial were involved in Gilmore's hiring, this testimony is essentially unrefuted. In addition, Gilmore's paycheck stub indicates a payment to him of $575.00 under the heading "Salary." Gilmore also introduced a letter signed by Prestige Ford's general manager, addressed to Gilmore's counsel, stating "The pay is as follows $575.00 per week salary." We overrule Prestige Ford's second issue.

## Employee Birthday Report

In its third issue, Prestige Ford argues that the trial court erred by exclud-

ing Defendant's Exhibit 2, a computer printout prepared by Prestige Ford titled "Active Employees as of Feb. 97." According to Prestige Ford, this four-page report lists all persons employed at the same time as Gilmore. For each individual, the report indicates his or her date of birth, along with other information, such as position, department number, and employment date. At trial, Gilmore objected to this exhibit solely on grounds of relevancy. Gilmore argued that evidence of policies affecting a broad range of employees was not relevant because Gilmore was claiming disparate treatment, not disparate impact. We see no reason, however, why an employer accused of terminating an employee because of his or her age should not be entitled to present evidence demonstrating that it retained other similarly-situated employees who were as old or older than the plaintiff. At a minimum, such evidence tends to make the existence of the employer's discriminatory intent less probable than it would be without the evidence, and therefore satisfies the definition of "relevant evidence" under Rule 401 of the Texas Rules of Evidence. We conclude that this exhibit should not have been excluded on grounds of relevance.

■ We do not reverse on this issue, however, because Prestige Ford failed to prove that exclusion of this evidence probably resulted in an improper judgment. *Alvarado,* 897 S.W.2d at 753. Prestige Ford claims that from this exhibit, the jury would have concluded that Gilmore was not the oldest sales person, that there were a number of employees as old or older, and that they had been employed by Prestige Ford for some time. Of the 142 employees listed in Defendant's Exhibit 2, only three have an earlier birthday than Gilmore. All three of these older employees have a different position title and are listed under different department num-

bers. In fact, of the six employees listed in the report that share Gilmore's department number, Gilmore is the oldest by over ten years. Nothing on the face of this exhibit suggests that anyone as old or older than Gilmore was employed in a similar capacity or, more importantly, also worked under Gilmore's supervisor, Gianelli. Although these deficiencies might have been corrected by witnesses at trial, Prestige Ford failed to make an offer of proof or file a bill of exception preserving any such testimony for appellate review. Faced with nothing but the document itself, we cannot say that the trial court's decision to exclude this report probably resulted in an improper judgment. Prestige Ford's third issue is overruled.

## PRESTIGE FORD'S MOTION FOR PROTECTION

■ In its seventh issue, Prestige Ford argues that the trial court erred in denying its motion for protection filed in response to a subpoena duces tecum. On the Saturday before trial began, Prestige Ford's general manager was served with a subpoena requesting that he appear at trial the following Monday with eighteen categories of documents. Prestige Ford contends that this subpoena was served in violation of Rule 176.3 of the Texas Rules of Civil Procedure, which states, "A subpoena may not be used for discovery to an extent, in a manner, or at a time other than as provided by the rules governing discovery." Tex.R. Civ. P. 176.3(b).

■ Motions for the protection of parties and witnesses are addressed to the sound discretion of the trial court. *Fisher v. Continental Ill. Nat'l Bank & Trust Co. of Chi.,* 424 S.W.2d 664, 670 (Tex.Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Prestige Ford points to no evidence that Gilmore's subpoena was "used for discovery" apart from its own bald assertion. Furthermore, Prestige Ford

has failed to demonstrate any harm resulting from the trial court's action. Prestige Ford claims that it was prejudiced because Gilmore was permitted to "harangue" Prestige Ford's witnesses regarding the requested documents and "to present Prestige Ford as being evasive and uncooperative." Prestige Ford does not provide a single citation to the record to give examples of this alleged prejudice. We overrule Prestige Ford's seventh issue.

### PRESTIGE FORD'S MOTION FOR DIRECTED VERDICT

In its fourth issue, Prestige Ford challenges the trial court's denial of its motion for a directed verdict at the close of all the evidence. We review the denial of a directed verdict by a legal sufficiency or "no evidence" standard of review. *Weidner v. Sanchez*, 14 S.W.3d 353, 373 (Tex.App.—Houston [14th Dist.] 2000, no pet.).[5] We must consider all the evidence in the light most favorable to Gilmore, indulging every reasonable inference in favor of the court's determination that there is some evidence to support his claims. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998). A legal sufficiency point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706,

711 (Tex.1997). If the record contains any evidence of probative force to support the contested elements of Gilmore's claims, Prestige Ford's challenge must be overruled. *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

The parties agree that Gilmore's age discrimination claims are subject to the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex.2001) (TCHRA claim); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999) (ADEA claim). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *Quantum Chem.*, 47 S.W.3d at 477. The burden of going forward then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). The offer of a legitimate reason eliminates the presumption of discrimination created by the plaintiff's prima facie showing, and the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination. *Id.*

In this case, Prestige Ford argues only that Gilmore failed to satisfy his initial burden of presenting a prima facie case.[6] A prima facie case of age discrimination requires proof of four elements:

---

5. Contrary to Gilmore's assertion, this court may review the denial of a motion for directed verdict on appeal. *Weidner*, 14 S.W.3d at 373 n. 4.

6. Typically, after the case has been fully tried on the merits, the adequacy of the plaintiff's prima facie showing is unimportant, and the

appellate court merely determines whether there was sufficient evidence from which a reasonable jury could have concluded that age discrimination occurred. *See Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252–53 (5th Cir.1996). In this case, however, Prestige Ford did not present any evidence of a legiti-

(1) the plaintiff is a member of a protected class;

(2) the plaintiff was discharged;

(3) the plaintiff was qualified for the position from which he was discharged; and

(4) the plaintiff was either replaced by someone younger or was otherwise discharged because of his age.

*See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 318–19 (5th Cir.1997).[7] Prestige Ford contends that Gilmore's evidence is legally insufficient to satisfy the fourth element.

Gilmore concedes that he did not present evidence that he was replaced either by someone younger or by someone outside his protected class. Instead, Gilmore points to the following incidents as evidence to support his contention that he was discharged because of his age:

- During Gilmore's employment, Gianelli made several derogatory remarks to him, including calling him an "old man" on numerous occasions;

- One time after Gilmore used his asthma inhaler, Gianelli asked him, "You aren't going to die on us, are you, old man?";

- Immediately after firing Gilmore, Gianelli remarked to another employee that they were "rid of . . . that old son of a bitch."

Prestige Ford argued to the trial court that Gianelli's comments were "stray re-marks" that were insufficient to establish discrimination. *See, e.g., Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 254 n. 4 (5th Cir.1996) (citing cases in which an employer's age-related comments were found insufficient as a matter of law to establish age discrimination). In contrast to those cases cited in *Woodhouse*, however, the offending comments here were undeniably directed at Gilmore and were repeated several times during the three days he worked under Gianelli's supervision. Nor can it be said that Gianelli's comments were remote in time. Gianelli's statement that Prestige Ford was "rid of . . . that old son of a bitch" was made almost immediately after Gilmore was terminated.

■ Furthermore, none of the cases in which the courts found age-related comments to be insufficient evidence of discrimination involved the question of whether a prima facie case had been made. The burden of establishing a prima facie case of age discrimination requires "[o]nly a minimal showing." *Bauer*, 169 F.3d at 967; *see also Quantum Chem.*, 47 S.W.3d at 477 ("[T]he plaintiff's burden at [the prima facie] stage of the case 'is not onerous.' ") (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). Gianelli's comments constitute more than a scintilla of evidence that Gilmore was discharged because of his age, at least for purposes of establishing a prima facie case of discrimination.

mate, nondiscriminatory reason for its decision to terminate Gilmore. All of Prestige Ford's witnesses admitted that they had no personal knowledge of why Gilmore was discharged. Thus, Prestige Ford would have been entitled to a directed verdict only if Gilmore failed to meet his prima facie burden.

7. Several cases suggest that the fourth element may also be satisfied by showing that the plaintiff was replaced by someone outside the protected class. *See, e.g., Faruki*, 123 F.3d at 318–19. However, the United States Supreme Court has expressly stated that "the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).

Prestige Ford also contends, citing *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177 (7th Cir.1997), that Gilmore must prove, as part of his prima facie case, that he was meeting his employer's bona fide expectations for his job. Prestige Ford argues that Gilmore was not meeting its bona fide expectations because he never sold a car and did not "make a substantial number of telephone calls, write letters, and make other efforts to generate prospects." The only evidence supporting these "expectations," however, was testimony from Charles Kramer, Prestige Ford's current general manager, who was not employed by Prestige Ford at the time Gilmore was there. There is no evidence that these "expectations" were in existence at the time Gilmore was hired, or that they were ever communicated to Gilmore. In fact, Gilmore's uncontested testimony is that he was never told that he was expected to sell a certain number of cars, or that he was required to talk to a certain number of people per day. Thus, this case is easily distinguishable from *Coco,* where there was uncontradicted evidence that the plaintiff "was not doing the job for which he had been hired." 128 F.3d at 1180.

The trial court did not err in denying Prestige Ford's motion for directed verdict. Prestige Ford's fourth issue is overruled.

### JURY'S FINDING OF WILLFULNESS

■ In its fifth issue, Prestige Ford attacks the jury's finding that the decision to discharge Gilmore because of his age was willful as against the great weight and preponderance of the evidence. In its brief, Prestige Ford raises two arguments: (1) Gilmore presented no evidence that his supervisor, Gianelli, was aware of Gilmore's age and acted on that awareness; and (2) Prestige Ford's management had no knowledge of Gilmore's firing and allegations of discrimination until after the fact because Gilmore failed to pursue an internal remedy under company policy. Prestige Ford does not cite a single case or present any legal argument as to why either of these two contentions supports a reversal of the jury's finding. An issue or point of error not supported by authority is waived. *See Wright v. Greenberg,* 2 S.W.3d 666, 673 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). We overrule Prestige Ford's fifth issue.

### CONCLUSION

Prestige Ford fails to demonstrate that the trial court committed any error requiring reversal. In addition, Prestige Ford waived its complaint that the jury's verdict was against the great weight and preponderance of the evidence. The trial court's judgment is affirmed.