ACCEPTED
01-15-00680-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/16/2015 1:30:28 PM
CHRISTOPHER PRINE
CLERK

# №. 01-15-00680-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/16/2015 1:30:28 PM
CHRISTOPHER A. PRINE
Clerk

_____

IN THE
COURT OF APPEALS
FOR THE
FIRST COURT OF APPEALS
AT HOUSTON, TEXAS

_____

ESP RESOURCES, INC. f/k/a PANTERA PETROLEUM, INC.,
Appellant,

v.

BWC MANAGEMENT, INC.,
Appellee.

On Appeal from the 113th Judicial District Court in Harris County
Trial Court Case №. 2013-25068

_____

**APPELLEE'S BRIEF**

_____

TIMOTHY J. HENDERSON
6300 West Loop South, Suite 280
Bellaire, Texas 77401-2905
713.667.7878
713.668.5697 (fax)
timjhenderson@msn.com

COUNSEL FOR APPELLEE

November 16, 2015

# (a)  Identity of Parties and Counsel

For ESP Resources, Inc. f/k/a Pantera Petroleum, Inc. ("***ESP***"), Appellant:

David A. Fettner, Esq.
FETTNER THOMPSON
6700 Sands Point Drive
Houston, Texas 77074
713.626.7277
1.888.876.2292
daf@fettnerthompson.com
services@fettnerthompson.com

and

Joshua D. Brinen, Esq.
BRINEN & ASSOCIATES, LLC
7 Dey Street, Suite 1503
New York, New York 10007
1.212.330.8151
1.212.227.0201 (fax)
jbrinen@brinenlaw.com

For BWC Management, Inc. ("***BWC***"), Appellee:

Timothy J. Henderson
6300 West Loop South, Suite 280
Bellaire, Texas 77401-2905
713.667.7878
713.668.5697 (fax)
timjhenderson@msn.com

The Reporter's Record of the Trial proceeding will be referenced by the abbreviation "RR" followed by the name of the witness, if pertinent, the volume, the page and the line numbers, or if an exhibit, "RR" followed by the volume and the

page number(s), the trial exhibit number, a document description. There are 7 volumes in the Reporter's Record.

The official Trial Court Clerk's Record will be referenced by the abbreviation "CR" followed by identification of which of the Clerk's Records is being referenced, if necessary, and then to the cited page numbers. There is 1 Volume of the Clerk's Records.

## (b)  Table of Contents

(a)  Identity of Parties and Counsel ii

(b)  Table of Contents iv

(c)  Index of Authorities v

(d) Statement of the Case 1

(e)  Statement of Jurisdiction 2

(f)  Issues Presented 3

(g)  Statement of Facts 4

(h)  Summary of the Argument 6

(i)  Argument 7

    A.  Admission of Evidence: 7

    B.  Exclusion of Evidence: 12

    C.  Legal and Factual Insufficiency Points: 15

(j)  Prayer 19

NOTICE OF ELECTRONIC FILING 20

CERTIFICATE OF SERVICE 20

CERTIFICATE OF COMPLIANCE 21

# (c)  Index of Authorities

**Cases**

*4M Linen & Uniform Supply Co. v. W.P. Ballard & Co.*,
 793 S.W.2d 320 (Tex. App.-Houston [1st Dist.] 1990, writ denied).............. 12, 13

*Barnhart v. Morales*,
 459 S.W.3d 733 (Tex. App. – Houston [14th Dist.] March 5, 2015,
 no. pet) ...................................................................................................8, 9

*Bay Area Healthcare Grp., Ltd. v. McShane*,
 239 S.W.3d 231 (Tex. 2007) ...............................................................10

*Bowie Memorial Hosp. v. Wright*,
 79 S.W.3d 48 (Tex. 2002) ....................................................................11

*Caffe Ribs, Inc. v. State*,
 328 S.W.3d 919 (Tex. App. – Houston [14th Dist.] 2010, no pet.) ......................11

*Cain v. Bain*,
 709 S.W.2d 175 (Tex. 1986) ................................................................16

*Cappuccitti v. Gulf Indus. Products, Inc.*,
 222 S.W.3d 468 (Tex. App. – Houston [1st Dist.] 2007, no pet.) ........................18

*City of Brownsville v. Alvarado*,
 897 S.W.2d 750 (Tex. 1995) ................................................................10

*City of Keller v. Wilson*,
 168 S.W.3d 802 (Tex. 2005) ................................................................16

*COC Services, Ltd. v. CompUSA, Inc.*,
 150 S.W.3d 654 (Tex. App. – Dallas 2004, pet. denied) ....................................18

*Dillard Dep't Stores, Inc. v. Hall*,
 909 S.W.2d 491 (Tex. 1995) ................................................................15

*Gee v. Liberty Mut. Fire Ins. Co.*,
765 S.W.2d 394 (Tex. 1989) ...........................................................................10

*GTE Mobilnet of S. Tex. v. Pascouet*,
61 S.W.3d 599 (Tex. App. – Houston [14th Dist.] 2001, pet. denied) .................16

*GTE Southwest, Inc. v. Bruce*,
998 S.W.2d 605 (Tex. 1999) ...............................................................................8

*Holloway v. Skinner*,
898 S.W.2d 793 (Tex.1995) ..............................................................................18

*Hooper v. Chittaluru*,
222 S.W.3d 103 (Tex. App. – Houston [14th Dist.] 2006, pet.
denied) (op. on reh'g) ........................................................................................11

*In re E.A.K.*,
192 S.W.3d 133 (Tex. App. – Houston [14th Dist.] 2006, pet. denied) .................9

*Interstate Northborough Partnership v. State*,
66 S.W.3d 213 (Tex. 2001) ...............................................................................11

*K Mart Corp. v. Sanderson*,
937 S.W.2d 429 (Tex. 1996) ..............................................................................15

*Ludlow v. DeBerry*,
959 S.W.2d 265 (Tex. App.-Houston [14th Dist.] 1997, no pet.) .........................13

*Maritime Overseas Corp. v. Ellis*,
971 S.W.2d 402 (Tex. 1998) ..............................................................................16

*PGP Gas Prods., Inc. v. Fariss*,
620 S.W.2d 559 (Tex. 1981) ..............................................................................13

*Pool v. Ford Motor Co.*,
715 S.W.2d 629 (Tex. 1986) ..............................................................................16

*Prestige Ford. Co. v. Gilmore*,
56 S.W.3d 73 (Tex. App. – Houston [14th Dist.] 2001, pet. denied) ....................11

*Texaco, Inc. v. Sanderson*,
   898 S.W.2d 813 (Tex. 1995) ...............................................................15

*Wade v. Commission for Lawyer Discipline*,
   961 S.W.2d 366 (Tex. App.-Houston [1st Dist.] 1997, no pet.) ...........................12

*Walker v. Anderson*,
   232 S.W. 899 (Tex. App. – Dallas 2007, no pet.) .................................................18

**Statutes**

TEX. R. APP. P. §25.1(b)..............................................................................2

**Rules**

Tex. R. App. P. 33.1(a)(1)(A)-(B) ..............................................................14

TEX. R. EVID. 103(a) .................................................................................12

Tex. R. Evid. 103(a)(2) .............................................................................14

Tex. R. Evid. 103(b).................................................................................12

TEX. R. EVID. 401......................................................................................15

Tex. R. Evid. 803(6).................................................................................10

Tex. R. Evid. 902(10)................................................................................9

## (d) Statement of the Case

This is a suit on 3 Promissory Notes (RR, Volume 4, Pages 3-8). The case was tried to a jury which rendered a verdict on March 31, 2015 (CR, Vol. 1, Pages 146-157). The Court granted a Judgment on the verdict on May 8, 2015 (CR, Vol. 1, Pages 165-167). ESP filed a notice of appeal (CR, Vol. 2, Pages 264-265).

## (e)  Statement of Jurisdiction

The Appellate Court has jurisdiction of the District Court Appeal.  Tᴇx. R.
Aᴘᴘ. P. §25.1(b).

## (f)  Issues Presented

ISSUE 1:  *Admission of Evidence* – The trial court did not abuse its discretion in admitting relevant evidence offered by Appellee.

ISSUE 2:  *Exclusion of Evidence* – The trial court did not abuse its discretion in excluding evidence offered by Appellant on unrelated issues.

ISSUE 3:  *Legal and Factual Insufficiency Points* –The evidence was sufficient to support the jury's findings.

## (g)  Statement of Facts

On September 30, 2007, BWC loaned Pantera Petroleum, Inc. ("*Pantera*"), now ESP, as borrower, $73,006.00 documented by a promissory note signed by Pantera (the "*73K Note*").  (RR, Vol. 2, Page 36, Line 6 to Page 37, Line 3).  The 73K Note was due on September 30, 2012.  (RR, Vol. 4, Pages 3-4 {π Ex. 1}).

On July 30, 2008, BWC loaned Pantera $100,000 documented by a promissory note signed by Pantera (the "*100K Note*").  (RR, Vol. 2, Page 28, Lines 11-24).  The 100K Note was due on July 22, 2013.  (RR, Vol. 4, Pages 5-6 {π Ex. 2}).

On or about August 29, 2008, BWC loaned Pantera another $100,000.00 documented by a promissory note signed by Pantera (the "*Second 100K Note*")[1].  (RR, Vol. 2, Page 39, Lines 10-19).  The Second 100K Note was also due on July 22, 2013.  (RR, Vol. 4, Page 7-8 {π Ex. 3}).

In addition to the exhibits, the president and sole shareholder of BWC, Jenny Crichton, addressed the funding of the 3 Promissory Notes (RR, Vol. 2, Page 31,

---

[1]    Jointly, the 73K Note, the 100K Note and the Second 100K Note will be referred to as the "*3 Promissory Notes*".

Lines 15-20).  Ms. Crichton testified that all 3 Promissory Notes were funded (RR, Vol. 2, Page 40, Lines 1-24).

In December 2008, Pantera entered into an agreement with ESP Resources, Inc., a Delaware corporation, whereby Pantera acquired 100% ownership of ESP. Pantera changed its name to "ESP Resources, Inc."  (RR, David Dugas, Vol. 2, Page 126, Line 6 to Page 127, Line 20 and RR, Vol 6, Page 77 {π Ex. 7}, ESP Form 10-K {12-31-2013}).  ESP is publicly traded under the symbol "ESPI." (RR, Vol. 6, Page 77 {π Ex. 7}, ESP Form 10-K {12-31-2013}).

ESP recognized the $273,000 from the 3 Promissory Notes as "notes payable" with "interest at 5 percent per annum and are due between September 30, 2012 and July 22, 2013" in several ESP's audited Securities and Exchange Commission ("**SEC**") public filings which the officers certifies were true and accurate.  See (i) RR, Vol 4, Page 74 {π Ex. 7}, ESP Form 10-K {12-31-2013}; (ii) RR, Vol 7, Page 63 {Δ Ex. 14}, ESP Form 10-K {12-31-2008}; and (iii) RR, Vol. 8, Page 72 {Δ Ex. 1}, ESP Form 10-K {12-31-2009}.

ESP/Pantera's own accountants, BDO Canada LLP ("**BDO**"), confirmed after audit, as publically reported by ESP, the receipt of the funds.  (RR, Vol 4, Pages 11-22 {Δ Ex. 6}, BDO Business Records).  The BDO business records in the case at

bar, which include an affidavit from Lynn Watt and the document produced by BDO, pursuant to a Letter Rogatory issued in this case, demonstrate that the 3 Promissory Notes were fully funded. (RR, Vol. 4, Page 11-22 {$\pi$ Ex. 6}, BDO Business Records).

According to ESP's auditors BDO, the $73,006.90 of the 73K Note was received on October 1, 2007. (RR, Vol 4, Page 13 {$\pi$ Ex. 6}, BDO Business Records). The $100,000.00 of the 100K Note was wired into Pantera' account on August 11, 2008. (RR, Vol 4, Page 20 {$\pi$ Ex. 6}, BDO Business Records). The $100,000.00 of the Second 100K Note was wired into Pantera' account on August 29, 2008. (RR, Vol 4, Page 20 {$\pi$ Ex. 6}, BDO Business Records).

### (h)  Summary of the Argument

BWC lent ESP $273,006.00 documented by 3 Promissory Notes. The 3 Promissory Notes were in default and were due. ESP did not pay the 3 Promissory Notes.

At trial, BWC provided evidence of the 3 Promissory Notes, the funding of the 3 Promissory Notes, the default and the amount due. As such the Final Judgment and Order on the verdict should be affirmed.

## (i) Argument

### *A. Admission of Evidence:*

Plaintiff Exhibits 4 and 5 are proof that money (corresponding exactly to the amount in the $100K Note and the Second $100K Note that ESP signed) was transferred to ESP. (RR {π Ex. 4 &6}, Vol. 4, Pages 9-10).

The president and sole shareholder of BWC, Jenny Crichton testified that Exhibits 4 and 5 were written confirmation to her that the loan money had been funded. ESP, through its president David Dugas, admitted ESP did get the money (as a long term debt). (RR, Vol 2, Page 41, Lines 3 to Page 42, Line 2 and RR, Vol 2, Page 148, Lines 2-22). Previously, Ms. Crichton testified that all 3 Promissory Notes were funded (RR, Vol. 2, Page 40, Lines 1-24). ESP, through its president David Dugas, admitted and disclosed in public filings that ESP got the money from the loans. See RR, Vol 4, Page 74 {π Ex. 7}, ESP Form 10-K {12-31-2013}. Furthermore, Exhibits 4 and 5 are also cumulated to the evidence from ESP own accounting firm, contained in Exhibit 6 (discussed below) that confirmed that the $100K Note and the Second $100K Note were funded.

While no error was committed, certainly the admissions of Exhibits 4 and 5 did not cause an improper judgment. Exhibits 2 and 3 {the $100K Note and the Second $100K Note} came into evidence without objection. Exhibit 7, ESP's own

SEC 10-K filing showing the long term obligations of the $100K Note and the Second $100K Note, came into evidence without objection. See, Reporter's Record, Vol. 3, pg.7, Lines 1-8. On the basis of these 3 documents alone, the jury could have rendered the exact same judgment.

Therefore, the district court's admission of Exhibits 4 and 5 would have been harmless. When erroneously admitted evidence is cumulative, the error is harmless. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 615 (Tex. 1999).

Exhibit 6 was a business record affidavit from ESP own auditors obtained by a letter rogatory early in discovery in this case. The Exhibit was offered as, and with, a business records affidavit. (RR, Vol. 2, Page 100, Line 8 to Page 101, Line 13).

The major issue here seems to be handwritten notes on the auditors' forms. *Barnhart v. Morales*, 459 S.W.3d 733 (Tex. App. – Houston [14th Dist.] March 5, 2015, no. pet) addressed this very issue.

In *Barnhart*, Barnhart complained about the trial court's admission of Barnhart's Memorial Hermann Hospital emergency room medical records, without redacting the handwritten notes that hospital staff made on preprinted hospital forms while treating Barnhart. The challenged handwritten notes include comments that Barnhart appeared intoxicated, was uncooperative, and had to be restrained by hospital staff in order to be treated for her injuries. In Barnhart's view, these

_____

handwritten notes are hearsay within hearsay and inadmissible because there is no indication who wrote the notes or whether they had personal knowledge of the event or condition, rendering the notes untrustworthy. The *Barnhart* Court disagreed, writing:

> "Rule 803(6) of the Texas Rules of Evidence creates an exception to the hearsay rule for
>
>> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10)....
>
> The challenged handwritten notes are found within medical records that were accompanied by an affidavit prepared by the custodian of records for Memorial Hermann Hospital in compliance with Rule 902(10). *See* Tex. R. Evid. 902(10). The custodian's affidavit provided that all 34 pages of records contained in Plaintiff's Exhibit 18 were business records of Memorial Hermann Hospital that were kept in the regular course of the hospital's business and that the records were made by an employee, representative, or a physician on the hospital's medical staff who had personal knowledge of the act, event, or condition being recorded. There is no requirement that the custodian preparing the affidavit be the creator of the records or have personal knowledge of the information recorded in the document but only knowledge of how the records were prepared. *In re E.A.K.*, 192 S.W.3d 133, 142 (Tex. App. – Houston [14th Dist.] 2006, pet. denied).
>
> As Rule 803(6) makes clear, the hearsay exception applies to all business records regardless of their form. *See* Tex. R. Evid. 803(6).

The fact that some parts of the challenged records were handwritten notes on preprinted forms designed to be filled in by the hospital's staff while evaluating and treating emergency room patients does not take them outside of the business records hearsay exception.... Here, the challenged records, along with the business records affidavit, establish that the handwritten notes were made by Memorial Hermann Hospital staff while treating Barnhart in the emergency room. Barnhart has not shown that the handwritten nature of these notes renders them untrustworthy. We therefore conclude the trial court did not abuse its discretion when it overruled Barnhart's hearsay within hearsay objection and admitted Plaintiff's Exhibit 18 without redacting the handwritten notes."

*Barnhart* at 743-44.

Moreover, there was no reversible harm because the jury had before it other evidence of the funding via the testimony of Ms. Crichton (RR, Vol. 2, Page 40, Lines 1-24). See TEX. R. APP. P. 44.1(a).

The admission or exclusion of evidence rests within the sound discretion of the trial court. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995) and *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). To obtain reversal of a judgment based on error of the trial court in admission or exclusion of evidence, the following must be shown: (1) the trial court did in fact commit error, and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

When reviewing matters committed to the trial court's discretion, a reviewing

court may not substitute its own judgment for that of the trial court. *Bowie Memorial Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Thus, the question is not whether this Court would have admitted the evidence. Rather, an appellate court should uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App. – Houston [14th Dist.] 2006, pet. denied) (op. on reh'g).

A party seeking to reverse a judgment based on evidentiary error must prove that the error probably resulted in rendition of an improper judgment, which usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Prestige Ford. Co. v. Gilmore*, 56 S.W.3d 73, 78 (Tex. App. – Houston [14th Dist.] 2001, pet. denied). To determine whether excluded evidence probably resulted in the rendition of an improper judgment, an appellate court reviews the entire record. *Caffe Ribs, Inc. v. State*, 328 S.W.3d 919, 927 (Tex. App. – Houston [14th Dist.] 2010, no pet.) (citing *Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220 (Tex. 2001)).

While no error was committed, certainly the admission of exhibit 6 did not cause an improper judgment. Exhibits 1 {the $73K Notes} came into evidence without objection. Exhibit 7, ESP's own SEC 10-K filing showing the long term

obligations of the $73K Note, came into evidence without objection. See, Reporter's Record, Vol. 3, pg.7, Lines 1-8. On the basis of these 2 documents alone, the jury could have rendered the exact same judgment.

## B. Exclusion of Evidence:

ESP did not preserve error on any exclusion of evidence matter

Texas recognizes two types of offers to preserve error: the offer of proof (formerly referred to as an informal bill of exception) and the formal bill of exception. See TEX. R. EVID. 103(a), (b); TEX. R. APP. P. 33.2; *4M Linen & Uniform Supply Co. v. W.P. Ballard & Co.*, 793 S.W.2d 320, 323 (Tex. App.-Houston [1st Dist.] 1990, writ denied). To challenge exclusion of evidence by the trial court on appeal, the complaining party must present the excluded evidence to the trial court by offer of proof. *Wade v. Commission for Lawyer Discipline*, 961 S.W.2d 366, 374 (Tex. App.-Houston [1st Dist.] 1997, no pet.).

Texas Rule of Evidence 103(b) provide "(b) Record of Offer and Ruling. The offering party shall, as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, its offer of proof."

An offer of proof preserves error for appeal if

(1) it is made before the court, the court reporter, and opposing counsel, outside the presence of the jury;

(2) it is preserved in the reporter's record; and

(3) it is made before the charge is read to the jury. See, *4M Linen & Uniform Supply Co.* at 323 (construing requirements of offer of proof under former rule 52(b) of the Rules of Appellate Procedure).

ESP did not submit the evidence excluded by offer of proof before the court's charge was read to the jury. The offer of proof serves primarily to enable the reviewing court to assess whether excluding the evidence was erroneous and, if so, whether the error was harmful. See *Ludlow v. DeBerry*, 959 S.W.2d 265, 270 (Tex. App.-Houston [14th Dist.] 1997, no pet.). The offer of proof also allows the trial court to reconsider its ruling in light of the evidence contained in the bill. Id and *PGP Gas Prods., Inc. v. Fariss*, 620 S.W.2d 559, 560 (Tex. 1981) (stating rationales underlying preservation-of-error requirement).

Appellants appear to rely on a pretrial and trial discussions with the trial court when the trial court ruled the Appellants could not adduce testimony or evidence on concerning the unrelated SEC investigation. Rule 33 of the Rules of Appellate Procedure governs preservation of error. Rule 33.1(a)(1)(A)-(B) states as follows:

33.1 Preservation; How Shown

(a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and Tex. R. App. P. 33.1(a)(1)(A)-(B) (underscored emphasis added); see also Tex. R. Evid. 103(a)(2) ("In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.").

The Appellants did not offer the written exhibits or ask any questions as contemplated by rule 103(a)(2) of the Rules of Evidence.

In any event, the unrelated SEC litigation involving Mr. Christopher Metcalf and Mr. Bob Vukavich was irrelevant. The investigation did not tend to make one issues in the case on the 3 Notes more likely or not. The Court, being generous on the relevancy point, still noted that "...the prejudicial value of that [the SEC litigation involving Metcalf and Vukavich] so outweighs the probative value." (Reporters Record, Vol. 3, Page 131, Lines 3-12). Further the Court noted that it was not

important in a note case for the jury to know that the SEC sued Mr. Christopher Metcalfe for manipulating stock prices. (Reporters Record, Vol. 3, Page 109, Lines 15-17).

There is not a hint of impropriety in the transaction in the case at bar. ESP signed 3 Notes, got all the money it borrowed, and has not paid BWC the money back. Nothing about any other completely unrelated transactions involving BWC, its president, or its president's former husband even whiffs of relevance in this case. Mr. Bob Vukovich's actions or inactions, if any, would not lead to any evidence having any tendency to make the existence, the amount and the non-repayment of the 3 Notes more or less likely. TEX. R. EVID. 401. See *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996); *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995).

## C. Legal and Factual Insufficiency Points:

When reviewing the legal sufficiency of the evidence, the Court should consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). The Court must credit favorable evidence if a reasonable factfinder could – and – disregard contrary evidence unless a reasonable factfinder could not. See id. at 827. The Court must determine whether the evidence

at trial would enable reasonable and fair-minded people to find the facts at issue. Id. The factfinder is the only judge of witness credibility and the weight to give to testimony. See id. at 819.

When reviewing a challenge to the factual sufficiency of the evidence, the Court should examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, the Court can set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615-16 (Tex. App. – Houston [14th Dist.] 2001, pet. denied). The Court may not substitute its judgment for that of the trier of fact, even if the Court would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet*, 61 S.W.3d at 616.

ESP suggested an issue that the money it received as equity money, not a loan based on the notes it signed (despite its own SEC filings to the contrary). But other

than raise the specter of the 'equity' issue, ESP proved nothing. No stock was issued (to FTS Financial) by ESP and Mr. Dugas did not issue any shares (RR, Vol. 2, Page 108, Lines 4-17). Such 'proof' of the issuance of ESP equity for a cash infusion should have been easy for ESP to establish – if true.

Appellee asserts that Ms. Crichton concede the loan was equity. Nothing could be further from the truth. The entire sequence of questions between counsel for Appellee and Ms. Crichton was based on a separate unrelated agreement when as follows:

> Q. FTS is a company that, you're saying, actually loaned the money to Pantera, correct?
> A. Yes.
> Q. I'm sorry?
> A. Yes.
> Q. Okay. Now, Mr. Henderson asked you earlier do you know the difference between debt and equity. And I believe you said that if they had a certificate, it would be equity. Correct?
> A. Yes.
> Q. And if you -- if Pantera got equity from FTS -- or sold equity to FTS, they wouldn't be required to pay it back, would they?
> A. No, not the equity. (RR, Vol. 2, Page 56, Lines 6-19).

ESP's President Mr. Dugas provided no evidence of the issuance of shares to FTS (RR, Vol. 3, Page 108, Lines 15-17) and Mr. Dugas listed the money as loans in the SEC public filings which he certified were true and accurate. See, e.g., RR,

Vol 4, Page 74 {π Ex. 7}, ESP Form 10-K {12-31-2013} and RR, Vol 7, Page 63 {Δ Ex. 14}, ESP Form 10-K {12-31-2008}.

There is certainly nothing unjust about requiring a publically traded company to pay 3 Notes which its own President signed. As noted in the Court's Charge, "A company is deemed to act through the actions and statements, if any, made by or for the benefit of the company by its officers and authorized representatives." There were no objections to the Court's Charge. See, Reporter's Record, Vol. 3, pg.4, Lines 2-8.

As noted in *Walker v. Anderson*, 232 S.W. 899, 918 (Tex. App. – Dallas 2007, no pet.): "The acts of a corporate agent on behalf of the principal are ordinarily deemed to be the corporation's acts. *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex.1995); *COC Services, Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 675 (Tex. App. – Dallas 2004, pet. denied). The individual employee or officer who acts for a corporation is that corporation's agent. See *Cappuccitti v. Gulf Indus. Products, Inc.*, 222 S.W.3d 468, 485 (Tex. App. – Houston [1st Dist.] 2007, no pet.)."

Ms. Crichton testified that she had BWC coordinate with a third party to provide ESP the money in connection with the 3 Notes, see, e.g., Reporters Record, Vol. 3, Page 39, Lines 2-5 {as to Note 1}; Reporters Record, Vol. 3, Page 44, Lines 2-12 {as to Notes 2 and 3}.

Furthermore, Ms. Crichton confirmed that the money for the 3 Notes was funded by speaking with both the party that paid the money and the party (ESP) that got the money.  Reporters Record, Vol. 3, Page 41, Lines 17-24.

### (j)  Prayer

THEREFORE, BWC requests that the Court AFFIRM the Final Judgment and Order of the District Court.

Respectfully submitted this 16th day of November 2015.

By:

Timothy J. Henderson
State Bar No. 09432500
6300 West Loop South, Suite 280
Bellaire, Texas  77401-2905
713.667.7878
713.668.5697 (fax)
timjhenderson@msn.com

COUNSEL FOR PLAINTIFF/APPELLEE,
BWC MANAGEMENT, INC.

OF COUNSEL:

David Loev, Esq.
State Bar No. 24002490
6300 West Loop South, Suite 280
Bellaire, Texas 77401-2905
713.524.4110
713.524.4122. (fax)
dloev@loevlaw.com

## NOTICE OF ELECTRONIC FILING

I, Timothy J. Henderson, Attorney for Appellee BWC, certify that I have electronically submitted the foregoing brief for filing in accordance with the Electronic File and Serve System for the First Court of Appeals on November 16th 2015.

_____
Timothy J. Henderson

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above pleading was served by United States Certified Mail, return receipt requested, postage prepaid, and/or by fax and/or by hand delivery and/or electronically through the electronic filing manager and/or by email by upon all persons or counsel at the address(es) below on the 16th day of November 2015:

David A. Fettner, Esq.
FETTNER THOMPSON
6700 Sands Point Drive
Houston, Texas 77074
713.626.7277
1.888.876.2292 (fax)
daf@fettnerthompson.com

Joshua D. Brinen, Esq.
BRINEN & ASSOCIATES, LLC
7 Dey Street, Suite 1503
New York, New York 10007
1.212.330.8151 and 1.212.227.0201 (fax)
jbrinen@brinenlaw.com

COUNSEL FOR DEFENDANT/APPELLANT
ESP RESOURCES, INC., f/k/a PANTERA PETROLEUM, INC.

_____
Timothy J. Henderson

_____
Page 20

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations.

1.  Exclusive of the portions exempted by TEX. R. APP. P. 9.4(i)(3), this brief contains 4846 words printed in a proportionally spaced typeface. (In the alternative, for briefs prepared in monospaced typeface, you may certify the number of lines of text used).

2.  This brief is printed in a proportionally spaced typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Word software.

3.  Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.  Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

_____
Timothy J. Henderson